PEOPLE v ROSEN

Docket No. 71161. Submitted April 17, 1984, at Lansing.—Decided
August 20, 1984. Leave to appeal applied for.

Nikki Rosen was convicted of delivery of a controlled substance,
cocaine, Lenawee Circuit Court, Kenneth B. Glaser, Jr., J.
Defendant appealed, alleging that the trial court erred in
allowing testimony concerning a prior delivery of cocaine, that
defendant was subjected to double jeopardy because an earlier
trial on the charge was concluded by a mistrial obtained by
defense counsel without defendant's consent, that the court
erred in allowing rebuttal testimony to impeach the credibility
of defendant's alibi witness, and that the information was
deficient and the court erred by denying a defense request for a
bill of particulars. *Held:*

1. Admission of evidence of prior similar acts requires that
such evidence be offered to show one of the factors enumerated
in the rules of evidence; in this case, knowledge. Further, the
factor sought to be shown must be material to the determina-
tion of the defendant's guilt. In this case the issue of defen-
dant's knowledge was never at issue, since the defense offered
was one of alibi, that defendant never delivered any substance
on the date in question. The prosecution's argument that the
charged delivery and the prior delivery were inextricably re-
lated is without merit. Admission of the testimony was error.

2. The requirement that a defendant consent to a mistrial is

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 320, 321.
[2] 29 Am Jur 2d, Evidence §§ 321, 323.
[3] 21 Am Jur 2d, Criminal Law §§ 264, 285-287.
  What constitutes accused's consent to court's discharge of jury or to
  grant of state's motion for mistrial which will constitute waiver
  of former jeopardy plea. 63 ALR2d 782.
[4, 5] 81 Am Jur 2d, Witnesses §§ 596, 600, 612, 613.
  Use or admissibility of prior inconsistent statements of witness as
  substantive evidence of facts to which they relate in criminal case
  —modern state cases. 30 ALR4th 414.
[6] 4 Am Jur 2d, Appeal and Error § 98.
  41 Am Jur 2d, Indictments and Informations § 159.
  Right of accused to bill of particulars. 5 ALR2d 444.
[7] 41 Am Jur 2d, Indictments and Informations § 129.

satisfied where there is a manifestation of the defendant's consent to dismissal by counsel. While a trial judge should elicit the express consent of a defendant to a mistrial, under the circumstances of this case the retrial was not barred by considerations of double jeopardy.

3. The rebuttal testimony used to impeach the alibi witness, in the form of a prior inconsistent statement, was not upon a collateral matter but, rather, bore on the witness's opportunity to observe defendant on the day of the alleged offense. The testimony was properly admitted.

4. The information was not rendered inadequate because it failed to name the party to whom defendant allegedly delivered the cocaine. However, the information's lack of specificity allowed the prosecution to pursue, without adequate notice, two theories upon which defendant could be convicted. Upon retrial, the prosecution shall present a bill of particulars specifying which theory or theories will be pursued at trial.

5. Defendant's other allegations of error were not addressed.

Reversed.

1. CRIMINAL LAW — EVIDENCE — PRIOR SIMILAR ACTS.

Evidence of a criminal defendant's prior bad act may be admitted to show one of several factors enumerated by the rules of evidence, but the factor to be shown must be one that is material to the determination of the defendant's guilt of the charged offense; the requirement of materiality is satisfied only if the enumerated factor is the subject of a genuine controversy (MRE 404[b]).

2. CONTROLLED SUBSTANCES — EVIDENCE — PRIOR SIMILAR ACTS — KNOWLEDGE — ALIBI.

The question of a defendant's knowledge of the nature of a controlled substance, where the defendant is charged with delivery of the substance, is immaterial and therefore not in dispute for purposes of admission of evidence of a prior similar act where the defense is alibi (MRE 404[b]).

3. CRIMINAL LAW — DOUBLE JEOPARDY — CONSENT TO MISTRIAL.

A defendant, once having been placed in jeopardy, has a right to have the matter of guilt or innocence decided and, unless the defendant consents to the trial's interruption or a mistrial is declared for manifest necessity, the state may not again try the defendant for the same offense; a manifestation of the defendant's consent to a dismissal by counsel is sufficient to satisfy the requirement of defendant's consent.

4. WITNESSES — CRIMINAL LAW — IMPEACHMENT OF WITNESS — EXTRINSIC EVIDENCE.

> Extrinsic evidence may not be used to impeach a witness on a collateral matter, even if the extrinsic evidence constitutes an otherwise admissible prior inconsistent statement of the witness.

5. WITNESSES — CRIMINAL LAW — IMPEACHMENT OF WITNESS — COLLATERAL FACTS.

> Three kinds of facts are not considered to be collateral and may thus be used for impeachment of a witness: (1) facts directly relevant to the substantive issues of the case, (2) facts showing bias, interest, conviction of crime and want of capacity or opportunity for knowledge, and (3) any part of the witness's account of the background and circumstances of a material transaction which as a matter of human experience he would not have been mistaken about if his story were true.

6. CRIMINAL LAW — INFORMATIONS — BILL OF PARTICULARS — ABUSE OF DISCRETION.

> A trial court's denial of a request for a bill of particulars is reviewed for an abuse of discretion where the information is not one of the statutory short forms; denial of a bill of particulars may constitute reversible error if the record demonstrates prejudice arising therefrom (MCL 767.44; MSA 28.984).

7. CRIMINAL LAW — INFORMATIONS — ADEQUACY OF INFORMATION.

> An information is not rendered inadequate because it fails to name the party to whom the defendant is alleged to have delivered narcotics.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Nathan T. Fairchild,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

*Neil H. Fink* and *Mark J. Kriger,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and T. GILLESPIE,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Per Curiam. Defendant was convicted by a jury of delivery of a controlled substance in violation of MCL 333.7401(1) and (2)(a)(iv); MSA 14.15(7401)(1) and (2)(a)(iv). She was sentenced to from 3 to 20 years imprisonment, and appeals as of right.

Defendant's first trial ended abruptly after accomplice Denise Beach, in response to a question by the prosecutor, testified in violation of an order *in limine* regarding a prior cocaine transaction between herself and defendant.

Beach was the prosecutor's first witness at defendant's second trial. She testified that she met Dorothy McAllen on April 12, 1982, in the parking lot of Bill Knapp's restaurant in Ann Arbor. Beach was not then aware that McAllen was an undercover police detective. McAllen arranged to purchase seven grams of cocaine from Beach the following day. To obtain the seven grams, Beach telephoned defendant and asked if defendant "could get me the same or large—as what I had gotten before". Beach arranged to have defendant deliver the cocaine to Beach's home at approximately 1:00 p.m. on April 13, 1982.

McAllen and Beach were upstairs in Beach's home when defendant arrived. McAllen was told to wait in the living room while Beach and defendant conducted their transaction in the kitchen. Defendant entered the kitchen and, after a short conversation, handed Beach the cocaine. Beach took the cocaine in the living room and gave it to McAllen, who gave Beach $625. Beach then returned to the kitchen and gave defendant the money. Beach estimated that the entire deal consumed only 10 to 15 minutes.

Beach testified that she was later arrested for selling cocaine, and that she pled guilty to a lesser charge of possession. She was then awaiting sen-

tence. On cross-examination, Beach stated that she pled guilty to a lesser charge in exchange for her testimony at defendant's trial. Beach indicated that she was also facing a charge of delivery in another county.

When Beach testified on direct examination that she asked defendant, on April 12, 1982, if defendant "could get me the same * * * as what I had gotten before", defense counsel objected to the reference to a prior drug transaction. Instead of declaring another mistrial, however, the trial judge overruled the objection. He subsequently dissolved the order *in limine*, allowing the prosecutor to inquire more fully into the prior deal. Pursuant to this ruling, Beach was permitted to testify that she had obtained a gram of cocaine from defendant on April 12, 1982.

Detective Sergeant Dorothy McAllen of the Michigan State Police testified that she met Denise Beach approximately two weeks before April 13, 1982. She talked with Beach on April 12, 1982, to arrange the purchase of seven grams of cocaine for $625. She went to Beach's house at approximately 1:20 p.m., and waited for the delivery to be made. While Beach and McAllen were upstairs, a car drove up and she saw a white female exit from the driver's side of the car and walk to the porch. McAllen then went into the living room to wait. McAllen went into the dining room to get a look at the woman, and saw defendant for several seconds. Beach then came in with a packet, which McAllen identified as cocaine. She gave Beach $625, which Beach gave to the woman in the kitchen.

Officer Donald Michelin testified that on April 13, 1982, he was assigned as a surveillance officer. At approximately 1:45 p.m., he saw defendant's

car drive toward Beach's house. He saw defendant's car arrive at Beach's house and leave shortly thereafter. He saw defendant driving the car after it left Beach's house. Upon stipulation that the package given to Officer McAllen was cocaine and that no fingerprints were obtained from the package, the prosecution rested its case.

Defendant interposed an alibi defense.

Eric Fraser testified that on April 13, 1982, he was working in the same building as defendant. Defendant had a small boutique in the front of the building, and Fraser worked in the store across the hall. Defendant would often loan out her car to Fraser and others. On the way to court, Fraser drove to where Officer Michelin was on surveillance, and from that place he could not see Beach's house or persons driving by the house. Based on Fraser's calendar and recollection April 13, 1982, was an ordinary day, from which he inferred that defendant spent the day working in her store. Following Fraser's testimony, the jury, judge and counsel went with Officer Michelin to where he was stationed on surveillance. Police cars were driven by to give jurors an opportunity to view the scene.

Marjorie Nureyev testified that she owned the shop across from defendant's. On April 13, 1982, defendant was in her own shop and Nureyev's shop between the hours of noon and 3:00 p.m. Nureyev based her recollection on the fact that she had only one paying customer that day, and that defendant had engaged in conversation with the customer. Nureyev further stated that defendant had a reputation for being a truthful person and law-abiding citizen.

Defendant testified that she was working in her store on April 13, 1982, and that she did not

deliver cocaine to Denise Beach. She did, however, frequently lend the use of her car to other persons.

Irving Shaw, an assistant prosecutor in Lenawee County, testified that he was originally the prosecutor in the Nikki Rosen case. When Denise Beach entered her plea of guilty, Shaw had asked her if defendant had delivered a gram of cocaine to her on April 12, 1982. Beach replied that defendant had not done so.

The people were allowed to present the testimony of Officer Robert Bittel in rebuttal. Bittel testified that he had interviewed Marjorie Nureyev, who had told Bittel that sales in her shop had been good on April 13, 1982. This effectively impeached Nureyev's in-court testimony that she had only one paying customer that day.

Defendant has raised eight assignments of error, the first of which compels reversal of defendant's conviction.

I

*Did the trial court err in allowing introduction of testimony concerning a prior cocaine sale involving defendant and Beach?*

Defendant's second trial began on January 6, 1983. Defendant's motion *in limine* to prevent the introduction of "prior bad acts" testimony was granted. On direct examination, Denise Beach testified that she made arrangements to sell Officer McAllen seven grams of cocaine. Beach stated that, in order to obtain the cocaine, she called defendant and "asked her if I could, you know, if she could get me the same or large—as what I'd gotten before". Beach then testified that defendant said "yes". Defendant objected, arguing that Beach's testimony violated the court's order *in*

*limine.* The court, however, overruled defendant's objection and held that the testimony was admissible under MRE 801(d)(2)(B) as a party-opponent admission.

After the prosecutor concluded his direct examination, the court dissolved its order *in limine,* stating:

*"The Court:* Okay. At this time I'm going to dissolve the order *in limine* that was previously given. It's quite obvious now why the problem happened in the last case, and I think the witness is entitled to be here because she's been instructed previously that she wasn't to mention any prior transactions. Now, appears that it was—it is necessary for her to testify to what was delivered the day before that she was discussing with this witness in order to establish that this witness knew it was cocaine. I think that's one of the elements and I think that's good evidence to prove it.

"And so I'm dissolving the motion *in limine* at this point. I'm not going to let him go into great detail. To the extent it's necessary to explain this testimony, she may testify what she delivered her before was cocaine because that's knowledge that this person has to—has to be proven to have had. At present her testimony is I asked her for only—I asked her if she could get me seven grams of what she had gotten me yesterday or before, or whatever it was. Now, we've not—the jury doesn't know what yesterday or before was. But she can testify to what was delivered to her yesterday or before or whatever it was she said in order to show that Miss Rosen made the connection and knew it was cocaine she was bringing. So, the motion *in limine* is dissolved, gentlemen, to that extent."

Denise Beach then testified that she received one gram of cocaine from defendant on April 12, 1982, the day before that of the charged delivery.

We agree with defendant that evidence of the antecedent delivery could not appropriately have

been admitted under the so-called "similar acts" rule, MRE 404(b). Before evidence of a prior bad act may be admitted to show one of the factors enumerated in the court rule, in this case knowledge, that factor must be material to the determination of defendant's guilt of the charged offense. *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982). Further, the materiality requirement is only satisfied if the enumerated factor is the subject of a genuine controversy. *Golochowicz, supra.* See also *People v Major,* 407 Mich 394; 285 NW2d 660 (1979).

In our case there was never a disputed issue concerning whether defendant knew the substance delivered to be cocaine; defendant claimed that she did not deliver any substances to Beach on April 13, 1982.

In *People v Rustin,* 406 Mich 527; 280 NW2d 448 (1979), the defendant was charged with delivery of a controlled substance to an undercover officer. As in the instant case, the defendant claimed that he did not commit the act. The trial court permitted the prosecution to introduce evidence of a prior transaction between defendant and the officer, to show the defendant's intent on the occasion in question. The Supreme Court reversed this Court's unpublished decision which upheld the defendant's conviction, stating:

"By way of contrast, the defense in this case was that the defendant did not perform the act in question at all. The defendant denied selling undercover agent Martinez the phencyclidine, contending that an individual named 'Randy' had done so. Thus, there can be no claim that the testimony concerning a prior controlled substance transaction was introduced to negate a claim on the part of the defendant that he did not know that the substance which he delivered was controlled nor did the defendant claim that the delivery of the controlled

substance, although performed by him, was somehow done unintentionally. The defendant quite simply contended that he did not deliver the controlled substance. Thus we conclude that the reason for the admission of this evidence, namely, to establish the defendant's intent on the occasion in question, was insufficient to warrant the introduction of this evidence at trial." *Rustin, supra,* p 531. Compare *People v Duncan,* 402 Mich 1; 260 NW2d 58 (1977).

As with the element of intent in *Rustin,* we find the question of defendant's knowledge immaterial, for purposes of supporting the introduction of similar acts evidence, when the defense is alibi.

The people avoid reliance on MRE 404(b), arguing instead that evidence of the prior transaction was admissible because the two deliveries were inextricably related, citing *People v Delgado,* 404 Mich 76; 273 NW2d 395 (1978). In *Delgado,* the prior sale of a small quantity of drug was ostensibly for "trial purposes", the smaller sale thus being a condition precedent to the subsequent purchase of a greater quantity of contraband. The *Delgado* Court held that the two deliveries were "inextricably related", and that the jurors were "entitled to have before them the facts concerning the [prior sale] as an integral part of the events which were incidental to the [subsequent] sale". *Delgado, supra,* p 84. This is, of course, "res gestae" thinking.

The prosecutor finds *Delgado* analogous because in this case Beach testified that she had asked defendant for the same "as what I had gotten before". However, there is no testimony to the effect that the April 12 one-gram delivery was a condition precedent to the larger, subsequent delivery, nor was there any indication that both deals were arranged at the same meeting. Thus

there is an absence of evidence that the charged sale followed from the April 12 sale "as does an effect follow from a cause". *Delgado, supra,* p 84.

For the reasons set forth above, we conclude that admission of testimony concerning the April 12 delivery was error. We do not view the error as harmless. Unlike the situation in *People v Benon,* 413 Mich 530; 321 NW2d 372 (1982), cited by plaintiff, the evidence against this defendant was not "extraordinarily strong".

## II

*Was defendant's right to be free from double jeopardy violated where defense counsel obtained a mistrial to which defendant did not personally consent, and where defendant was subjected to a second trial?*

Defendant's first jury trial began on December 9, 1982. During direct examination Denise Beach testified that on April 12, 1982, she delivered a gram of cocaine to undercover Officer McAllen at Bill Knapp's restaurant in Ann Arbor. Thereafter, Officer McAllen asked Beach if she could purchase an additional seven grams. Beach further testified that in order to obtain the seven grams of cocaine, she telephoned the defendant. The prosecutor then inquired into the background relationship between Beach and defendant. At this point, defense counsel requested a bench conference. After the bench conference, the court excused the jury and defense counsel on record expressed his concern that the prosecutor might try to elicit testimony concerning a prior controlled substance transaction between Beach and defendant. The court then entered an order *in limine* precluding the prosecutor from introducing testimony of any controlled substance transaction other than the one alleged in the

information. Immediately after the jury was re-called, the prosecutor resumed his efforts to elicit testimony from Beach relative to her relationship with defendant. Beach testified that her relationship with defendant was primarily social. The prosecutor proceeded to inquire as to that relationship with the following line of questioning:

"*Q.* All right. Now let's go back to—or come up to April of 1982. You've testified that Dorothy McAllen wanted to buy a further seven grams or so of cocaine, is that correct?

"*A.* Yes, sir.

"*Q.* You did not then know that she was an under-cover police officer?

"*A.* No, sir.

"*Q.* That would be what, about a quarter ounce?

"*A.* Correct.

"*Q.* What caused you to call Nikki Rosen at that point?

"*A.* Um, a friend—well, the girlfriend that introduced me to Dottie McAllen—I was doing her a favor and I asked Nikki to do me a favor and Nikki did.

"*Q.* Now, did you know that Nikki Rosen could get you some cocaine?

"*A.* At that time? No.

"*Q.* Well, when you called her, what did you say to her and what did she say to you?

"*A.* Well, previously—okay. I had gotten the gram that I had sold to Dottie McAllen, I had got that off of Nikki and I asked * * *"

At this point, defendant's counsel objected and stated that he had no choice but to move for a mistrial. The trial court agreed and granted the motion. Before granting a mistrial, however, the court did not question defendant as to whether she had any knowledge of the consequences of a mis-trial, or whether she in fact agreed to the mistrial.

Defense counsel, prior to the second trial, filed a motion to dismiss based on double jeopardy. The court denied defendant's motion to dismiss.

Defendant's first argument, that retrial was barred because the mistrial was produced by "prosecutorial overreaching and bad faith", is rejected as without merit on the facts before us.

Defendant also maintains that double jeopardy considerations barred retrial because the record does not reflect that defendant gave her personal consent to the mistrial. Once a criminal defendant has been placed in jeopardy before a tribunal, he or she has a right to have the matter of guilt or innocence weighed by that tribunal. Unless the defendant consents to the trial's interruption, or a mistrial is declared for manifest necessity, the state may not again try the defendant for the same offense. *People v Alvin Johnson,* 396 Mich 424; 240 NW2d 729 (1976).

This Court, however, has consistently held that a manifestation of a defendant's consent to dismissal by counsel is sufficient to satisfy the consent requirement. *People v Harvey,* 121 Mich App 681, 688-689; 329 NW2d 456 (1982); *People v Grenke,* 112 Mich App 567; 316 NW2d 494 (1982); *People v Blackburn,* 94 Mich App 711; 290 NW2d 61 (1980); *People v Hoffman,* 81 Mich App 288; 265 NW2d 94 (1978), *lv den* 403 Mich 850 (1978).

While we concur in the sentiment expressed by the *Hoffman* Court, that trial judges should elicit the express consent of defendants to mistrials, we hold that retrial was not barred in this case.

## III

*Did the trial court err in admitting rebuttal*

*testimony to impeach, on a collateral matter, the credibility of defendant's principal alibi witness?*

Marjorie Nureyev operated a shop directly across a common corridor from defendant's shop. She testified that defendant was present in her own shop and in Nureyev's place of business during the period of time that the April 13, 1982, cocaine transaction took place. Specifically, Nureyev testified that on the date in question she had only one paying customer, who came in to pick up a skirt. This customer was shortly to embark on a trip to Japan, and the witness remembered defendant and the customer discussing the upcoming trip. On cross-examination, the prosecutor repeatedly asked the witness whether she had told anyone that sales in her store had been good on April 13, 1982. Nureyev denied making such a statement.

The prosecutor, over defense objection, introduced the rebuttal testimony of Officer Bittel, who testified that Nureyev told him April 13, 1982, had been a good business day.

It is a rule of long standing in this jurisdiction that extrinsic evidence may not be used to impeach a witness on a collateral matter. *People v Losey,* 413 Mich 346, 353; 320 NW2d 49 (1982); *People v Teague,* 411 Mich 562, 566; 309 NW2d 530 (1981). This rule applies even if the extrinsic evidence constitutes a prior inconsistent statement of the witness, otherwise admissible under MRE 613(b). *People v Carner,* 117 Mich App 560, 571; 324 NW2d 78 (1982) (Opinion of N. A. BAGULEY, J.).

The matter upon which Nureyev was impeached, however, was not collateral. In *People v Guy,* 121 Mich App 592, 604-605; 329 NW2d 435 (1982), *lv den* 417 Mich 1088 (1983), this Court

endorsed the discussion in McCormick, Evidence (2d ed), § 47, pp 98-99, concerning what is not collateral. The *Guy* Court provided this synopsis:

"McCormick indicates there are three kinds of facts that are not considered to be collateral. The first consists of facts directly relevant to the substantive issues in the case. The second consists of facts showing bias, interest, conviction of crime and want of capacity or opportunity for knowledge. The third consists of any part of the witness's account of the background and circumstances of a material transaction which as a matter of human experience he would not have been mistaken about if his story were true."

As to the second category of facts, McCormick states in part:

"The second kind of facts meeting the above mentioned test for facts that are not collateral includes facts which would be independently provable by extrinsic evidence, apart from the contradiction, to impeach or disqualify the witness. Among these are facts showing bias, interest, conviction of crime, and want of capacity or opportunity for knowledge." (Footnotes omitted.) McCormick, *supra,* p 99.

In our case the number of customers Nureyev had to service on the day in question bore on her opportunity to observe defendant's continued presence. This matter therefore falls within the second category of noncollateral facts set forth by McCormick, as it would have been provable by extrinsic evidence even absent an impeachment. We find no error in the admission of Officer Bittel's rebuttal testimony.

IV

*Was defendant denied her right to notice of the*

*charges against her, where defendant alleged that the information was deficient and the trial court refused to order the prosecutor to furnish defendant a bill of particulars stating to whom she had allegedly delivered cocaine?*

The information in the instant case stated that on April 13, 1982, in the Township of Franklin, defendant

"did then and there manufacture, deliver or possess with intent to manufacture or deliver less than 50 grams of a mixture containing the controlled substance, to-wit: cocaine; contrary to Sec. 333.7401(1) and (2)(a)(iv), CL 1978, as amended; MSA 14.15(7401)(1) and (2)(1)(iv)."

The information did not specify whether defendant was charged with delivery of cocaine to Denise Beach, or whether she was charged as an aider and abettor in the delivery of cocaine from Denise Beach to Officer McAllen.

Defendant brought a motion to quash the information, arguing that the prosecutor, at the preliminary examination, failed to sustain his burden of proof that defendant acted as an aider and abettor in the delivery from Denise Beach to Officer McAllen. The trial court denied defendant's motion. Defendant then requested that the prosecutor supply a bill of particulars. The prosecutor objected, arguing that defendant had all the known facts regarding the transaction and the names of the witnesses involved. The trial court refused to order the prosecutor to supply defendant with a bill of particulars.

Defendant argues that the information should have specified which transaction was the basis for the charge against defendant or, in the alternative, that defendant was entitled to a bill of partic-

ulars stating on which transaction the prosecutor was proceeding.

When an information is not one of the statutory short forms found in MCL 767.44; MSA 28.984, as is the case here, we review a denial of a bill of particulars for abuse of discretion. *People v Tenerowicz,* 266 Mich 276; 253 NW 296 (1934); *People v Jones,* 75 Mich App 261, 268-269; 254 NW2d 863 (1977). Denial of a bill of particulars may constitute reversible error if the record demonstrates prejudice arising therefrom. *People v Missouri,* 100 Mich App 310, 331; 299 NW2d 346 (1980), *lv den* 411 Mich 1039 (1981).

We agree with prior decisions of this Court holding that an information is not inadequate because it fails to name the party to whom the defendant was alleged to have delivered narcotics. *People v Swindelhurst,* 120 Mich App 606, 609; 328 NW2d 92 (1982); *People v Carriger,* 37 Mich App 605; 195 NW2d 25 (1972), *lv den* 388 Mich 812 (1972). Defendant's more intriguing complaint is that the information's lack of specificity allowed the prosecution to pursue, without adequate notice, two theories of delivery.

The prosecutor did indeed, in final argument, argue that defendant was involved in two deliveries of cocaine:

"The second element is whether this defendant possessed it with intent to deliver it and/or she delivered it. If she delivered it or she possessed it with intent to deliver, then she's guilty as charged.

"Now, we submit that there wasn't just one delivery in this case, there were actually two. First of all, she delivered it to Denise Beach. She handed it to Denise Beach, and this in itself makes her guilty as charged. But secondly, she was a part and parcel of the delivery by Denise Beach to Detective Dorothy McAllen. It was

all really one transaction or acting together in concert. And so * * *

*   *   *

"As I indicated to you, ladies and gentlemen, this delivery by Denise Beach to Detective Dorothy McAllen was really all one concerted action by both parties and that delivery in itself is sufficient. Actually we have two, but either one or both is adequate to establish the delivery.

"Certainly this defendant possessed this cocaine. She took it to that house in Clinton with the intention of delivering it and she did in fact deliver it. And she was part and parcel of the second delivery from Denise Beach to Detective McAllen. So, she's, we submit, as guilty as a person can be."

While the prosecution fails to grasp the relevance of *People v Vega,* 413 Mich 773; 321 NW2d 675 (1982), its significance is not lost on us. In *Vega* the defendant delivered heroin to a co-defendant, who in turn gave it to an undercover police officer. The clear import of the Court's discussion at pp 782-783 is that delivery from the defendant and the co-defendant, as conspirators, to the undercover agent was an entirely different theory than delivery from the defendant to the co-defendant.

In the instant matter, the delivery from defendant to Beach and the delivery from Beach to McAllen, although part of a common criminal transaction, constitute two separate theories of criminal liability as regards defendant. Consequently, we direct that, prior to retrial, the prosecution shall present to defendant a bill of particulars specifying which theory or theories of delivery it will proceed with at trial.

## V

*Other Issues*

While defendant's remaining allegations of error need not be addressed, we deem it appropriate to make the following comments pertinent to retrial. While we would not find the trial court's preferred instructions on character evidence to be reversibly erroneous, we believe the applicable standard criminal jury instructions are somewhat easier to understand.

Additionally, we think that the trial judge should, on retrial, honor a defense request to question prospective jurors on voir dire concerning accomplice testimony. Compare *People v Milkovich,* 31 Mich App 582; 188 NW2d 124 (1971).

Reversed.