# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LAWRENCE DAVID TYLUTKI,

Defendant-Appellant.

UNPUBLISHED
April 12, 2018

No. 336608
Oakland Circuit Court
LC No. 2016-258331-FH

---

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of delivery of a controlled substance less than 50 grams (oxycodone), MCL 333.7401(2)(a)(*iv*); one count of delivery of a controlled substance (amphetamine), MCL 333.7401(2)(b)(*ii*); one count of delivery of a controlled substance (alprazolam), MCL 333.7401(2)(c); and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent terms of 1 to 20 years' imprisonment for delivery of oxycodone and 1 to 7 years' imprisonment for each of the other two drug charges. The trial court also sentenced defendant to 2 years' imprisonment for each count of felony-firearm, to be served concurrently with one another, but consecutive to the other sentences. We affirm.

Defendant's involvement in selling prescription medications was revealed after a raid at the home of a person who had purchased prescription drugs from defendant. After the raid, a controlled buy was organized with money being provided to a buyer and having the buyer call defendant to provide her with pills. Defendant came to the buyer's home and delivered the requested pills. He was pulled over shortly after leaving the buyer's house and the money provided to the buyer was found on his person. The requested pills were located on the buyer's kitchen counter.

On appeal, defendant first argues that he was denied the effective assistance of counsel when his trial attorney failed to object to improper testimony regarding his credibility and pursued a line of questioning that actually bolstered the credibility of one of the prosecution's

witnesses. Although we agree with defendant that the opinion testimony was objectionable, defendant was not prejudiced by its admission, and reversal is not required.

A claim of ineffective assistance is unpreserved where defendant did not move for a new trial or move for a *Ginther*[1] hearing below. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Here, defendant neither moved for a new trial or for a *Ginther* hearing.[2] "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *Id*.

The evidentiary issue of whether witnesses gave improper opinion testimony regarding defendant's credibility was also not preserved because defense counsel did not object to the testimony at trial. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."). Unpreserved issues are reviewed under the plain error standard. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*Id*.]

Both the Michigan and United States Constitution guarantee a criminal defendant the right to effective assistance of counsel. US Const Am VI; Const 1963, art 1; *People v Pickens*, 446 Mich 298, 308; 521 NW2d 797 (1994); *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. "[A] trial court's findings of fact are reviewed for clear error." *Id*. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016). Constitutional questions are reviewed de novo. *LeBlanc*, 465 Mich at 579.

To be successful on a claim of ineffective assistance of counsel, a defendant must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . and that the deficient

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[2] Defendant moved this Court to remand for a *Ginther* hearing, but the motion was denied because defendant failed to support the motion with an affidavit or offer of proof as to how he intended to further develop the record. *People v Tylutki*, unpublished order of the Court of Appeals, entered August 1, 2017 (Docket No. 336608).

performance prejudiced the defense." *LeBlanc*, 465 Mich at 578. "First, defendant must prove that his trial counsel failed to meet an objective standard of reasonableness based on 'prevailing professional norms.' " *Lopez*, 305 Mich App at 694, quoting *Strickland*, 466 US at 688. "Second, defendant must establish prejudice, which is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* , quoting *Strickland*, 466 US at 694. "Proof of both prongs is needed to show that a conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable." *People v Meissner*, 294 Mich App 438, 459; 812 NW2d 37 (2011). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "The relevant inquiry is not whether a defendant's case might conceivably have been advanced by alternate means, but whether defense counsel's errors were so serious that they deprived the defendant of a fair trial." *Meissner*, 294 Mich App at 459 (citation and quotation marks omitted).

Police Detective Matthew Gobel interviewed defendant after he was arrested.[3] A video of the interview was played for the jury at trial. Before the video being played, Gobel testified that he had trained at the "Reid Interview School." Gobel also testified as follows:

> *Q*. And does his—is his story consistent from the beginning of the interview to the end of the interview?

> *A*. No. He actually—during the interview, if we have an opportunity to watch it, you'll see that several times I'll ask a question, he'll kind of deflect toward another incident, which is indicative of lying or being deceitful, as well as some of his posture and mannerisms.

> There were things that he was honest about but there were several things that his story kind of changed throughout.

After the video was played to the jury, Gobel testified, "Also, if you notice when you're watching the video, when we do start kind of pressing him on that, he'll hug himself, he'll put his arms up over his head. He starts fidgeting, which is also indicative of being deceptive." He also testified, "when you started pressing him on some of the other issues . . . he would kind of clam up, he would take long pauses and you could tell he was being deceptive." Similarly, Detective Steve Hendricks indicated his disbelief in statements made by defendant.

On cross-examination, defense counsel questioned Gobel about his training at the Reid School of Interrogation. Defense counsel elicited that Gobel had taken 32 hours of classroom training in basic and advanced interrogation methods. When asked about the "nine tenets of the

---

[3] Defendant was fully advised of his rights under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and signed an acknowledgment to that effect.

Reid School of Interrogation techniques," Gobel stated that he did not know them offhand. Defense counsel also asked Gobel about "confirmation bias." The exchange was as follows:

> *Q.* Well, it's a term they teach at the Reid School, which means that if you have a bias going in, if you believe something is or isn't going into an interrogation, that one of the things that an interrogator is likely to do is to reaffirm or confirm that bias through the course of the interrogation. And that's a—something that you're warned against. Isn't that true, sir?
>
> *A.* Correct.

Gobel agreed with counsel that, when he went into the interview, he had already formed the opinion that defendant was guilty. Defense counsel also elicited testimony that defendant asked to take a polygraph test and the investigators did not give him one.

"[I]t is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). The prosecution argues that the police witnesses were merely drawing inferences from their observations based on their training and experience. Merely because Gobel and Hendricks may have had training and experience does not permit them to give improper testimony regarding defendant's credibility. *Musser* makes clear that opinions concerning another witness's credibility "have no probative value" because they do not assist the jury in making its own credibility determination. *Id.* The statements made by Gobel were thus inadmissible opinion testimony regarding defendant's truthfulness. Gobel stated that defendant's behavior was "indicative of lying or being deceitful" and that "[t]here were things that he was honest about but there were several things that his story kind of changed throughout." This went beyond merely stating that defendant's interview testimony contained inconsistencies and clearly ventured into giving an opinion regarding whether he was telling the truth.

Although the error meets the first and second prongs of the plain error rule, the error was not outcome determinative. The jury had the same opportunity to observe defendant's interview testimony and could have come to the same conclusion about his truthfulness without the opinion of Gobel. Or it could have dismissed Gobel's opinion entirely. Moreover, there was other competent evidence presented at trial from which the jury could determine defendant's guilt beyond a reasonable doubt.

Jena Ferrell (the prosecution's key witness) testified that defendant had delivered prescription drugs to her approximately once a month for the last few years. Ferrell testified that after her house was raided in January 2016, she agreed to help the Narcotics Enforcement Team in a controlled buy from defendant. The controlled buy was observed by the police and the audio recording of that transaction was played for the jury. Defendant was arrested and found with nearly empty pill bottles matching the quantity and type of pills recovered from Ferrell's table. Accordingly, even if the erroneous opinion testimony had been omitted, there was ample evidence from which the jury could have convicted defendant. Defendant took the stand and told his version of events and the jury chose not to believe him. Further, the jury was instructed not to give the testimony of the police more weight than any other witness. "Jurors are presumed to

follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Defendant also challenges defense counsel's cross-examination of Gobel as bolstering Gobel's credentials regarding his ability to detect when someone is lying. Defense counsel's cross-examination of Gobel was not, however, objectively unreasonable. Defense counsel attempted to point out that Gobel received only 10 hours of classroom training, but Gobel corrected him and stated that he received 32 hours. Despite this apparent blunder, defense counsel went on to elicit that Gobel did not know the "nine tenets of the Reid School of Interrogation techniques." Further, defense counsel had Gobel concede that "confirmation bias" exists and that Gobel went into the interview believing defendant was guilty. Overall, this line of questioning was not as harmful as defendant contends. Defendant's attempt to impeach Gobel's credibility was consistent with sound trial strategy.

Further, defendant cannot show prejudice, because the outcome would likely have been the same, even without defendant's cross-examination of Gobel. As discussed above, there was significant other evidence against defendant from which a rational jury could conclude that he was guilty beyond a reasonable doubt. And, the issue whether defendant was being truthful during his police interview was not necessary to prove the elements of the crime. It was also not so unfairly prejudicial that it deprived defendant of a fair trial. The jurors had an opportunity to hear defendant provide his own version of events and they chose not to credit his testimony. Thus, defendant was not denied the effective assistance of counsel.

Next, defendant argues that the prosecution withheld exculpatory evidence from the defense in violation of his right to due process under *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). We disagree.

At the end of the first day of trial, defense counsel raised the issue that a police report from the January 2016 raid of Ferrell's house had not been turned over to the defense. After discussion on the record, the court ordered the prosecution to turn the report over as part of discovery, but made no ruling regarding the report's admissibility. On the second day of trial, defense counsel moved to admit the report for the purpose of impeaching the testimony of Joseph Julian and Ferrell. Defense counsel asserted that Julian had more drugs on him when the house was raided in January than he testified about at trial. Defense counsel also argued that Julian was arrested at that time. In refusing to allow defendant to use the police report from the January raid, the trial court stated, "[T]his is a case about February. I understand you want to bring in about January but the more you bring in about January, even I will be then confused as to exactly what we're here for."

"[T]his Court reviews due process claims, such as allegations of a *Brady* violation, de novo." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). Evidentiary issues are reviewed for abuse of discretion. *Aldrich*, 246 Mich App at 116. An abuse of discretion occurs "when the trial court renders a decision falling outside the range of principled decisions." *Dimambro*, 318 Mich App at 212.

"The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014).

> In identifying the essential components of a *Brady* violation, the Supreme Court has articulated a three-factor test: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. [*Id*. at 149-150.]

Stated differently, the three components of a *Brady* violation are "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Id*. at 150. "The government is held responsible for evidence within its control, even evidence unknown to the prosecution." *Id*. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. "The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. at 150-151.

First, we note that defendant has not made any effort to make the proffered police report part of the lower court record. There is no affidavit, offer of proof, or copy of the report itself attached to defendant's brief on appeal or motion to remand. The report is simply not before this Court, which makes it impossible to analyze for the purposes of *Brady*. However, even assuming the report says what defendant asserts, there has been no *Brady* violation because the report was not suppressed. The report was turned over to the defense on the first day of trial.

Moreover, assuming even further that the report was somehow "favorable" to defendant under *Brady*, it does not meet the test of materiality. Defendant argues that the report could be used to impeach the credibility of Ferrell and Julian. After having an opportunity, however, to review the report and hear argument from both parties, the trial court refused to allow admission of the report out of concern for confusing the jury with a collateral matter. Generally, "extrinsic evidence may not be used to impeach a witness on a collateral matter." *People v Rosen*, 136 Mich App 745, 758; 358 NW2d 584 (1984). It is also proper for the trial court to exclude evidence when its probative value is substantially outweighed by the danger of "confusion of the issues, or misleading the jury" under MRE 403. Although the trial court did not expressly cite either of these rules of evidence, the trial court expressed its concern for confusion and allowing consideration of a collateral matter. Given that the evidence was properly excluded for an appropriate reason, it cannot be said that the result of the proceeding would have been different had the evidence been disclosed.

Defendant also asserts that defense counsel was ineffective for failing to request the details of any consideration given to Julian, failing to use the report for impeachment, and failing to move for a mistrial. As discussed by the Michigan Supreme Court in *Chenault*, "*Brady* materiality is assessed under the same 'reasonable probability' standard that is used to assess prejudice" in a claim for ineffective assistance of counsel. *Chenault*, 495 Mich at 159. Because the allegedly suppressed evidence would not have affected the outcome, defendant's claim of ineffective assistance must fail because defendant cannot show prejudice. Further, defense counsel attempted to use the report for impeachment purposes and the trial court ruled against

him on the report's admissibility. That counsel was unsuccessful at admitting a piece of evidence does not establish that counsel's performance was deficient.

Finally, defendant asserts that the prosecutor's actions throughout the trial constitute prosecutorial misconduct and denied him a fair trial. We disagree.

Under the heading "prosecutorial misconduct," defendant again argues that the prosecutor improperly asked Gobel questions regarding defendant's credibility and improperly withheld exculpatory information from the defense. These issues are fully addressed above and did not deprive defendant of a fair trial. In addition to these two claims, defendant asserts that the prosecutor improperly objected when defense counsel asked Hendricks about defendant's cell phone and why he had not searched it or asked defendant for the code to unlock it. After the jury was excused, defense counsel argued that the defense had been prejudiced by the prosecutor's accusation of improper questioning. The trial court agreed that the witness should have been allowed to answer the question and that the prosecutor should not have accused defense counsel of asking an inappropriate question in front of the jury. Upon defendant's request, the trial court gave a curative instruction to the jury that defendant's question was not improper.

"This Court reviews claims of prosecutorial misconduct case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial." *Aldrich*, 246 Mich App at 110. The prosecutor's improper objection in this instance does not amount to prosecutorial misconduct requiring reversal because it did not deprive defendant of a fair trial. The trial court acknowledged that an error had occurred and granted defense counsels request for a curative instruction. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Abraham*, 256 Mich App at 279. The trial court having acknowledged the error and granted defendant a curative instruction, we see no need for further remedy.

Affirmed.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Peter D. O'Connell