*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

KELLY MARIE COCHRAN,

       Defendant-Appellant.

UNPUBLISHED
June 11, 2019

No. 338951
Iron Circuit Court
LC No. 16-009635-FH

Before: JANSEN, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of first-degree murder, MCL 750.316;[1] larceny in a building, MCL 750.360; conspiracy to mutilate a dead body, MCL 750.157a and MCL 750.160; concealing the death of a person, MCL 333.2841(3); and lying to a peace officer, MCL 750.479c(2)(d). The trial court sentenced her to life imprisonment without parole for first-degree murder, 2½ to four years' imprisonment for larceny in a building, 6 to 10 years' imprisonment for conspiracy to mutilate a dead body, three to five years' imprisonment for concealing the death of a person, and 2½ to four years' imprisonment for lying to a peace officer. We affirm, but remand this case for the ministerial task of correcting an obvious typographical error in the judgment of sentence.

Defendant's convictions arise from the killing of Christopher Regan in Caspian, Michigan. Regan disappeared on October 14, 2014. A missing-person case was initiated on October 27, 2014, but was unsuccessful. Defendant had been Regan's lover, and was a suspect in his disappearance. On May 17, 2016, she led authorities to a tree on a hiking trail in Iron County, Michigan, and Regan's skull was recovered nearby. At trial, the prosecutor presented evidence that defendant aided her now-deceased husband, Jason Cochran (Jason), in killing Regan on October 14, 2014; aided Jason in cutting up Regan's body; concealed Regan's death; stole Regan's camera; and lied to the police. Throughout the course of the police investigation,

---

[1] An aiding-and-abetting theory was submitted to the jury for the murder charge.

defendant gave many versions of the events surrounding Regan's disappearance and death. But at trial, she ultimately testified that Jason killed Regan, and any role that she played was due to her fear of Jason. The prosecutor, however, presented evidence that defendant played an active and willing role in the murder, and that defendant, not Jason, was the more dominant person in the Cochran marriage. During closing arguments, defense counsel mentioned the theory of coercion by Jason, but also relied heavily on the fact that defendant was an admitted and repeated liar, stating that the jury could not really believe *anything* that she said, including any version of the events of October 14, 2014.

On appeal, defendant argues that the trial court erred by allowing the admission of evidence under MRE 404(b) regarding (1) defendant's claims of being a serial killer, and her related claims that she or Jason had a so-called "trophy bag" or "trinket bag" with items relating to prior murders (henceforth referred to as "the serial-killer statements"), and (2) defendant's act of making shanks, or homemade weapons, of out her eyeglasses while in jail.

We review for an abuse of discretion a trial court's decision regarding the admission of evidence. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *Id*.

MRE 404(b) states:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

> (2) The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

The parties spend considerable time on appeal discussing whether the serial-killer statements satisfied the standard for admissibility under MRE 404(b). The prosecutor contends, however, that MRE 404(b) may not even be implicated in connection with this evidence, because it concerns solely what defendant said. The prosecutor implies that the serial-killer statements might instead constitute admissible statements of a party opponent. See MRE 801(d)(2). In addition, while the prosecutor set forth theories of admissibility under MRE 404(b) during the proceedings below, she also stated, "This is something that came from the defendant herself and I believe is an admission, as well." The trial court ruled: "[F]or the reasons stated by the

prosecutor, I'm going to allow that evidence in, which came from the mouth of the defendant in the course of several interviews."

The Supreme Court has noted that a prior statement, itself, is not a "prior act." *People v Goddard*, 429 Mich 505, 518, 523; 418 NW2d 881 (1988). In *People v Rosen*, 136 Mich App 745, 748, 751; 358 NW2d 584 (1984), a cocaine-delivery case, a person named Denise Beach testified that she had asked the defendant if she could get Beach a quantity of an unspecified substance that Beach had "gotten before." Beach then testified that the defendant said, "[Y]es." *Id*. The trial court overruled the defense objection that this line of testimony regarding something "gotten before" constituted inadmissible evidence of a prior bad act, stating that the testimony was admissible as an admission of a party opponent. *Id*. at 751-752. The trial court then allowed Beach to testify that the substance that she was referring to in her conversation with defendant, that she had obtained in the past before the charged offense, was cocaine. *Id*. at 752. On appeal, the defendant argued that the evidence of this prior cocaine delivery was inadmissible under MRE 404(b), and this Court agreed. *Id*. at 752-753, 755. See also *People v Milton*, 186 Mich App 574, 576; 465 NW2d 371 (1990) ("a statement of general intent is not a prior act for the purposes of MRE 404(b). Rather, as a statement of a party-opponent, admissibility is determined by the statement's relevancy and by whether its probative value is outweighed by its possible prejudicial effect.").

We conclude that the statements about defendant being a serial killer and having an associated trophy bag were not "other acts" under MRE 404(b) because, in clear contrast to *Rosen*, it is obvious that no party was attempting to seriously assert that the acts encompassed by defendant's statements had *actually occurred*. Iron River Police Department Chief Laura Frizzo, a key prosecution witness, testified that she never found any evidence that the trinket bag existed. A volunteer investigator testified that a trinket bag was not found, as did Officer Jeremy Ogden from the Hobart Police Department in Indiana,[2] another key witness for the prosecution. Ogden testified that the prosecutor's office found nothing useful in defendant's list of people allegedly killed by defendant or Jason, and, significantly, Ogden said that he did not even go through the list because "it's all part of her game." Sergeant Steven Houck, a detective with the Hobart Police Department, testified that no bodies were recovered in the areas specified by defendant. Houck indicated that the discussion of other murders was not productive because defendant did not give details, last names, or places, and he testified that no trucker was ever killed as claimed by defendant. Ogden testified that he had the sense that defendant, by mentioning these supposed other murders, "was leading us on a wild goose chase in order to divert attention from" the Regan investigation. Ogden believed that defendant's statement about a murdered trucker was "part of the game," "pointing me in the direction to have to do more work that, you know, isn't really related to anything." Ogden felt that defendant was viewing the

---

[2] Defendant and Jason moved to Michigan from Indiana, and moved back to Indiana after the police searched their Michigan home in connection with Regan's disappearance. Ogden developed a rapport of sorts with defendant, and greatly assisted the Michigan authorities in their investigation of the Regan case.

investigation as a game of chess. Ogden described defendant as "the most difficult person I've ever interviewed in my entire career."

The testimony as presented by the prosecutor's own key witnesses makes clear that the prosecutor was not attempting to prove that defendant actually committed these other murders or actually had a trinket bag; instead, the prosecutor was using the serial-killer statements to show how defendant was "playing" with the authorities. In our view, the statements were not "other acts" under MRE 404(b), but were admissions of a party opponent under MRE 801(d)(2)(A), and the pertinent questions, then, are merely whether the statements were relevant, MRE 401, and whether their probative value was substantially outweighed by the danger of unfair prejudice, MRE 403.

MRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." That defendant made up stories about serial murders and a trinket bag in order to engage in gamesmanship with the authorities tended to disprove her theory of being an intimidated, abused spouse. It furthered the prosecutor's theory that defendant engaged in manipulation and misdirection throughout the entire case, starting with her ruse of luring Regan to her home, using Jason's telephone, under the pretense of a dinner invitation. In addition, the evidence was not more prejudicial than probative because no one indicated that these other murders actually occurred, or that the trophy bag ever existed. As such, the evidence consisted merely of a few more lies by defendant amidst an enormously large collection of lies—lies that defense counsel himself emphasized in his closing argument.

Even assuming, for purposes of argument, that defendant's "acts" of making the serial-killer statements should be classified as "other acts" under MRE 404(b), we would still deem them admissible. MRE 404(b)(1) states that evidence of other acts is "not admissible to prove the character of a person in order to show action in conformity therewith," but it may be admissible for other purposes. The Supreme Court has set forth the following standard for admission of other-acts evidence under MRE 404(b):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402[3] as enforced through Rule 104(b);[4] third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017) (quotation marks and citation omitted).]

---

[3] MRE 402 provides, in pertinent part, that "[a]ll relevant evidence is admissible," and "[e]vidence which is not relevant is not admissible."

[4] MRE 104(b) states: "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

The list of purposes in MRE 404(b)(1) is not exhaustive. *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998). "It is a rule of inclusion that contains a nonexclusive list of 'noncharacter' grounds on which evidence may be admitted." *Id.* The rule "permits the admission of evidence on any ground that does not risk impermissible inferences of character to conduct." *Id.*

As noted, the trial testimony revealed that the other acts in question were defendant's false claims of being a serial killer, not evidence that she (or Jason) had in fact committed other murders. And the prosecutor argued before trial that the serial-killer evidence was admissible to "negate [defendant's] defense that she is a battered spouse or suffers from battered spouse syndrome." This was a proper, noncharacter purpose for introducing the evidence. See, generally, *Denson*, 500 Mich at 399 (stating that other-acts evidence may be introduced to rebut a defendant's claimed state of mind). In addition, the evidence was relevant because, if defendant was shrewd enough to continuously engage in gamesmanship with the authorities, this tended to rebut her defense of having been manipulated and controlled by Jason. Also, the evidence was not more prejudicial than probative because no one indicated that these other murders actually occurred, or that the trophy bag ever existed. The evidence consisted merely of more lies by defendant amidst a vast number of additional lies. Finally, to the extent that the lies nevertheless made reference to serious crimes, the trial court instructed the jury that it "must not convict the defendant here because you think she is guilty of other bad conduct." "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017).

In sum, whether viewed as admissions by a party opponent or as other-acts evidence, the serial-killer statements were admissible.

With regard to the evidence of shanks that defendant made out of her glasses while imprisoned, the prosecutor offered this evidence to show, in part, consciousness of guilt, which is a proper purpose for admitting evidence. See, e.g., *People v Compeau*, 244 Mich App 595, 598; 625 NW2d 120 (2001) (discussing consciousness of guilt). In addition, this evidence was relevant. In *Compeau*, the defendant argued that the trial court erred by admitting "evidence of his planned jail escape to show consciousness of guilt." *Id.* The Court disagreed, stating, "It is well established that evidence of flight is admissible to show consciousness of guilt." *Id.* The Court noted that "[t]he term 'flight' includes attempting to escape from custody," and it further noted that "[t]he remoteness of the flight from the time of defendant's arrest did not affect the admissibility of the evidence, but was relevant only to the weight of the evidence." *Id.* In the present case, a jail supervisor testified that he thought that defendant was intending to stab a female guard, or try to escape. Frizzo testified that defendant told her that defendant "considered stabbing the female correction officer with" the shanks. Defendant admitted that she told a police officer that she intended to hurt a guard with the shanks. Under these circumstances, the evidence was relevant under the rationale of *Compeau*.

In addition, the probative value of the evidence was not outweighed by the danger of unfair prejudice. MRE 403. The *Compeau* Court concluded that "the probative value of the evidence of the escape plan was not substantially outweighed by unfair prejudice," stating that MRE 403 "is not intended to prohibit prejudicial evidence, but only that which is unfairly prejudicial." *Id.* Here, too, the evidence was not unfairly prejudicial. Defendant explained on

cross-examination that her intention in making the shanks had only been to hurt herself because she "had had a rough go the last few years and had seen enough." In addition, the prosecutor in closing arguments emphasized that the shanks evidence was relevant to show defendant's consciousness of guilt, i.e., that her "back was against the wall." In other words, the prosecutor did not use the shanks evidence to show that defendant was violent in general. Moreover, as noted, the court instructed the jury that it "must not convict the defendant here because you think she is guilty of other bad conduct," and the jury is presumed to follow jury instructions, *Mullins*, 322 Mich App at 173. Under all of the circumstances, the trial court did not abuse its discretion by admitting the evidence of the shanks.[5]

In addition, even assuming, for purposes of argument, that admission of the other-acts evidence was erroneous, it was harmless under the circumstances of the case. As stated in *Denson*, 500 Mich at 409 (quotation marks and citations omitted), erroneous admission of other-acts evidence is not a ground for reversal unless it affirmatively appears that, "more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict."

That Jason killed Regan was clearly established during the trial testimony. The prosecutor presented evidence of defendant's admissions of having been a willing participant in the murder, and assisting Jason in mutilating Regan's body.[6] The prosecutor also presented evidence that defendant was the more dominant person in the Cochran marriage. Moreover, the evidence that defendant had a "murder pact"[7] with her husband is not being challenged on appeal. In addition, that defendant was a liar was demonstrated repeatedly during the course of the proceedings, in the context of areas *aside* from the serial-killer evidence. Evidence of additional lies by way of the serial-killer statements was not likely to have affected the outcome of the proceedings given all of the other evidence presented.

In light of the "murder pact" and the substantial additional evidence of defendant's guilt (including her many, many lies), it is not likely that evidence of the shanks affected the outcome of the proceedings either, especially given defendant's explanation during her testimony that she intended to use the shanks only to harm herself because she "had had a rough go the last few years and had seen enough."

We affirm defendant's convictions and sentences, but note that the judgment of sentence contains a typographical error. The amended judgment of sentence reflects a sentence of six

---

[5] We reject defendant's claim on appeal that the trial court's findings regarding admission of the other-acts evidence were insufficient to enable appellate review. We are able to examine the rationales provided by the trial court, and determine whether the trial court abused its discretion by admitting the evidence. The trial court incorporated by reference the reasons for admission provided by the prosecutor; while some of these reasons were inappropriate, some were not.

[6] The prosecutor also presented ample evidence of defendant's larceny and concealment of Regan's death, and that defendant lied to authorities is not in any serious dispute.

[7] By way of this pact, defendant and Jason agreed that if either of them had an extramarital affair, the lover should be killed.

months' to four years' imprisonment for larceny, but the trial court actually sentenced defendant to 2½ to four years' imprisonment for that crime. We direct the court to correct the error on remand.

Affirmed, but remanded for the ministerial task of correcting the judgment of sentence. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Michael J. Kelly