## The People v. William S. Getchell.

The act of procuring by falsehood the endorsement of a promissory note, is not, in itself, a false pretence within the statute, unless done with intent to defraud. And the prosecution, as evidence of the intent, must show something more than the falsehood and the procuring the endorsement thereby, before conviction can be asked under an indictment therefor.

Where an intent is made the gist of an offense, that intent should be shown by such evidence as, uncontradicted, will fairly authorize it to be presumed beyond a reasonable doubt.

Where defendant was put on trial for false pretences in procuring the endorsement of the prosecutor to a promissory note, by the falsehood that a former note for the same amount, endorsed in like manner, was destroyed, and after proof of the facts charged, offered to show in defense that he was a partner with the prosecutor; that the latter was bound by agreement between them to endorse for him to an amount considerably larger than the two notes, but had refused to perform the agreement, and that the money obtained on the notes was used in their business for their joint benefit, — *Held*, That the evidence should have been received as tending to disprove the presumption of an intent to defraud.

*Heard June 11th. Decided June 15th.*

On exceptions from the Recorder's Court of the city of Detroit, where the defendant was tried and convicted on an information charging him with obtaining by false pretences the endorsement of H. Norton Strong to a certain promissory note made by defendant.

At the trial in the Recorder's Court, the prosecution called said *Strong* as a witness, who, among other things, testified that, on the 10th of December last, the defendant brought to him a note, which the witness produced, and which was read in evidence, and a copy of which is as follows:

"$150. *Detroit*, Dec. 10, 1858.

"Thirty days after date I promise to pay to the order of H. N. Strong, Esq., one hundred and fifty dollars, value received, at the Peninsular Bank. "W. S. GETCHELL."

(Endorsed) "H. N. STRONG."

That witness endorsed the same at the request of defendant, and delivered the same to him.

That on the next morning, defendant came and asked

witness to endorse another like note, and told the witness that there was a mistake in the said first note — the marginal figures being $150, while in the body it was written as $100 — that he had not been able to use it; and the defendant, on being asked by witness where the note was, answered that he had destroyed it — had torn it up; that witness told him he ought to have shown said first note to witness, — to which defendant replied that he thought his word ought to be good for $150; that witness then endorsed and delivered to defendant a second note, which he took away with him, and which witness produced, and the same was read in evidence, a copy of which is as follows:

"150.			*Detroit*, Dec. 11, 1858.

"Thirty days after date I promise to pay to the order of H. N. Strong, Esq., one hundred and fifty dollars, value received, at the Peninsular Bank.	" W. S. GETCHELL."

(Endorsed) "H. N. STRONG."

That witness was induced to endorse the second note solely by above statements of defendant, and should not otherwise have endorsed it.

On cross-examination, witness testified that defendant was doing business under the name of "W. S. Getchell, Agent"; that witness had previously endorsed his paper, both for defendant's business and for defendant's private purposes; that, by contract, witness had agreed to furnish defendant in his business four thousand dollars, in cash or endorsements, if the legitimate business of his concern required it; that he never refused to advance or endorse for defendant when his legitimate business required; that said contract was in force December 10th, and that witness' advances and endorsements at that time did not amount to four thousand dollars; that witness was never a partner with defendant; that the advances and endorsements of witness had not at any time amounted to four thousand dollars; that he was to be a participator in the profits of

the business carried on by the name of "W. S. Getchell Agent."

The defendant then offered to prove a partnership between Strong and defendant: That Strong was liable for losses; that he was to furnish moneys and endorsements to the amount of four thousand dollars; that the notes alluded to were used in payment of liabilities of said concern, and that defendant had a right so to use them; and that said Strong did acknowledge his liability as a partner by payment of accounts of said concern, of which said Strong and Getchell were members. This was objected to by the prosecution, and was ruled out by the court, and an exception was taken by the prisoner.

The attorney for the defendant then asked said witness the following question: "Have you paid any accounts of said concern within the life, of the contract between you and defendant?" To which the prosecuting attorney objected, and the court sustained the objection, and the defendant excepted.

The defendant then asked witness the following questions: "Was defendant irresponsible on December 10th and 11th?" "Have you not refused to endorse for the defendant at any time during the lifetime of said contract?" "Have you not stated that you were unable to put in as much as you were obliged to by contract, in carrying on said business?" All of which were severally objected to by the prosecuting attorney, and the court sustained the objections, and the defendant excepted.

The witness then, on further cross-examination, testified, that on said December 10th the defendant ought to have been more responsible than when he signed the contract with witness. Defendant said when he went into the business he was worth nothing.

The defendant then asked the witness: "Had defendant told you during last summer that the concern was losing money, and he wanted to give up the business?" To

which the prosecuting attorney objected, and the court sustained the objection, and the defendant excepted.

The prosecuting attorney, further to maintain said issue, produced as a witness *W. H. Goodenow*, who, among other things, gave evidence tending to corroborate said Strong as to representations made by defendant.

The defendant then, to prove the issue on his part, recalled said Goodenow, who testified that defendant had been doing business for about three years as agent of Strong; that he had there the written contract between said Strong and defendant; which witness then produced to the court, and of which the following is a copy:

"*Memorandum of Agreement*, made this 1st day of July, A. D. 1857, between H. Norton Strong, of the city of Detroit, Wayne county, Michigan, of the first part, and William S. Getchell, of the same place, of the second part,—Witnesseth:

"*First*. That the said Strong authorizes the said Getchell to carry on for him, and as his agent, the business of merchandizing in the city of Detroit, at the store now occupied by him, for the period of one year, and on the following terms and conditions:

"*Second*. The said business shall be carried on in the name of Wm. S. Getchell, Agent.

"*Third*. The said Strong agrees to endorse notes and furnish moneys for and to the said Getchell, in the legitimate transactions of said business, from time to time, as may be necessary, but not to exceed the amount of four thousand dollars outstanding at any one time in notes and moneys.

"*Fourth*. Faithful accounts and complete books of account shall be kept, in which shall be entered all of the proceedings of said business of every kind, to be open at all times to the examination of said Strong.

"*Fifth*. Out of the said business shall be paid: First, To said Strong four hundred dollars per year for the rent

of the store room now occupied for said business, the same to be paid in equal quarterly installments; Second, All other debts and expenses of said business of every kind.

"*Sixth.* After the rent, debts, and expenses have been fully paid, the said Strong agrees to pay to the said Getchell one-half of the net profits of the business, as his compensation for serving as agent in carrying on said business; and said sum shall be in full for his compensation.

"*Seventh.* Said Getchell shall not, in said business, contract debts so that there shall be more than four thousand dollars of indebtedness outstanding at any time.

"*Eighth.* Nothing herein contained shall be construed to constitute a copartnership between the parties.

"*Ninth.* The said Getchell agrees to accept said agency, and to carry on the business contemplated by these articles, on the terms herein provided, and faithfully to keep, observe, and perform all and singular the same." (Signed) "H. N. STRONG. [L. s.]" (Signed) "W. S. GETCHELL. [L. s.]" Witness: "J. B. HINCHMAN."

"This agreement is hereby extended for the term of one year from the 1st day of July, 1858." "Detroit, July 2, 1858." (Signed) "H. N. STRONG. [L. s.]" (Signed) "W. S. GETCHELL. [L. s.]"

The defendant then offered the same in evidence; to which the prosecuting attorney objected, and the same was rejected by the court, and defendant excepted.

The defendant then gave evidence by *Jason Stebbins*, a witness produced by him, that he procured the first note to be discounted for defendant on the 10th of December, 1858, and that the discount did not exceed five per cent, a month.

The witness further said, that he met Strong on the day the note dated the 10th of December fell due, and told him that the note fell due that day. "He asked me if I had seen defendant. I said 'No, as I supposed he was

the man to pay the note, as he had defendant's assets.' He said the goods which had been in defendant's store were his, and he had taken them. He expressed surprise about the note, and said he supposed there was but one note out. In the afternoon of the same day I again saw Strong; he then said he had waived protest on the note, and expected to pay it."

The defendant then gave in evidence by *W. C. Skiff*, that on December 10th defendant paid N. P. Jacobs $75 on merchandise account, bought by W. S. Getchell, Agent: That defendant paid Jacobs nothing more until December 16th.

Defendant then offered to prove, that between the 10th and 20th days of December, defendant paid on debts of the concern of W. S. Getchell, Agent, three hundred dollars. The court rejected the testimony as to payments made other than on the 10th and 11th of December, but allowed proof as to payments made by defendant on those days; the prosecuting attorney, on behalf of the People, consenting thereto; and the defendant excepted.

The defendant then, by *H. S. Clapp*, gave evidence, that on the 10th day of December, defendant paid him one hundred and thirty-three dollars, on a note signed by W. S. Getchell, Agent, and endorsed by either N. P. Jacobs or H. N. Strong.

The defendant then produced as a witness, *M. M. Wells*, and offered to prove by him that the defendant paid him sixty dollars, somewhere from the 10th to the 15th of December. The witness stated that a payment was made him somewhere from the 10th to the 15th day of December, but he could not fix the day more accurately. The prosecuting attorney objected, unless the payment was made on the 10th or 11th of December, and the court rejected the evidence, and the defendant excepted.

*W. Gray*, and *S. Larned*, for defendant:

The most material ingredient of the offense charged is the *intent*. The evidence offered not only *might*, but *would*, preclude the criminal intent. If Strong was bound to advance the endorsement, there could be no fraud, and therefore no intent to defraud, in procuring it. — 3 *Arch. Cr. Law*, 471, 473, 474, 465; 7 *C. & P.* 354; 11 *Wend.* 18; 17 *Wend.* 540; 2 *Park. Cr.* 198; 2 *East. P. C.* 831; 1 *C. & P.* 661; 3 *Hill*, 169; 5 *E. C. L.* 20.

Even the arrest of a party on a false pretense, to induce him to pay an honest debt, is not false pretenses. — *Commonwealth v. Thompson*, 2 *Pa. Law Jour.* 250; 3 *Arch.* 473, 474, *note*. There must be an intent to defraud in *fact*, not in *law*. — *Commonwealth v. Hickey*, 3 *Pa. Law Jour.* 86; 3 *Arch.* 473, 474. Courts go a long way in the reception of evidence tending to show the intent. — 1 *Hill*, 315, 316.

*G. V. N. Lothrop*, and *D. E. Harbaugh*, for the People:

Where the paper is such that the false making thereof would be forgery, and such that the use of it *might* prejudice the person whose signature is thus obtained *in his property, or in any right*, the offense is complete as soon as it is obtained. The obtaining of a signature to such paper, by false pretences, to be used for a purpose not known or consented to by the signer, is defrauding him.

In all cases a man shall be presumed to intend the natural consequences of his act; and where the act is an unlawful one, criminal intent is presumed. In the class of cases under consideration, it is not necessary to show any use of the paper obtained, or any loss or probable loss by reason of it. The crime is committed by obtaining such paper by false pretences, and with the view of any unlawful use of it. A man is defrauded by the fact that his paper is thus obtained, and may be unlawfully used for purposes without his consent or knowledge. — *People v. Stone*, 9 *Wend.* 190;

*People v. Genung*, 11 *Wend.* 19; *People v. Gates*, 13 *Wend.* 321.

In larceny, if the taking is fraudulent, against the will of the owner, and with the intent to deprive him of the property, the use intended is of no consequence, even though for the benefit of the owner. — *Rex v. Morfit*, 1 *Br. Cr. Cas.* 307; *Rex v. Cabbage*, *Ibid.* 292; *Regina v. Handley*, 1 *C. & M.* 547.

Here the prosecutor is defrauded by the obtaining and negotiating his negotiable paper; for thereby he is cut off from many legal defenses which he might have to the original claim.

The case of *People v. Thomas*, 3 *Hill*, 169, cited by defense, was considered not to be a case of obtaining the money by false pretences, on the ground that the money was due. It might quite as well have been put on the ground that the motive of paying the money was rather to discharge an admitted debt than because of the falsehood. The case of *Rex v. Williams*, 7 *C. & P.* 355, it is submitted, is not law. This case is, in effect, the device of a creditor to collect a debt from an unwilling debtor, and is placed on the supposed latitude which that fact justifies.

We can not find any sound principles of law to sustain it. We do not believe that because a man claims a debt of another, which that other refuses to pay, the creditor may, by falsehood or crime, obtain property or chattels from the debtor. By such an act he legally and morally *defrauds* him of the property in question. It will not do to say that this wrong balances the wrongful withholding of the debt. The two wrongs do not make a right.

Martin Ch. J.:

We think the Recorder erred in excluding the evidence offered by the defendant.

The indictment charges that on the 11th of December, 1858, he, by means of false pretences, obtained the en-

dorsement of Strong to a note of one hundred and fifty dollars made by himself. The statute under which the indictment was found provides that "every person who, with intent to defraud or cheat another, shall designedly, by color of any false token or writing, or by any other false pretence, obtain the signature of any person to any written instrument, the making whereof would be punishable as forgery, or obtain from any person any money, personal property or valuable thing, shall be punished," &c.— 2 *Comp. L.* § 5783.

The object of the defense in this case, in offering the rejected evidence, was to show that there was no intent to cheat or defraud — the untruth of the pretence being admitted. A falsehood does not necessarily imply an intent to defraud, for it may be uttered to secure a right, and, however much and severely it may be reprobated in ethics, the law does not assume to punish moral delinquencies as such. To defraud is to deprive another of a right, of property or of money, and this may be accomplished by falsehood, by withholding the right or property, or by force. In the present case, the prosecutor insists that he was defrauded because he was induced to endorse a note by the false representation of the defendant that a prior note for the same amount, endorsed by him, was defective, and had been destroyed; that he was thereby induced to lend his name for double the amount he otherwise would. The simple fact of procuring by falsehood the endorsement, was not an offense within the statute; it must have been procured with the intent to defraud, and, where an intent is made the gist of an offense, that intent must be shown by such evidence as, uncontradicted, will fairly authorise it to be presumed beyond a reasonable doubt. It is true that a man is presumed to intend the natural consequences of his acts, but, under this statute, it is not the consequence but the intention, which fixes the crime. There are no *natural* consequences, strictly speaking, to this act. It is itself an indifferent act, as the consequences will depend upon what he does with the paper, and this will depend

upon his will—in other words, his intent. It was, therefore, necessary for the prosecutor to show something more than the application, the falsehood, and the endorsement, before he could ask a conviction; he should have shown those facts which, in the absence of all other proof, would warrant the jury in finding an intent to defraud; unless such intent is fairly to be inferred from the circumstances attending the act itself. If the fact of negotiating both notes would justify such a finding, yet the presumption thus raised might be repelled by the defendant, by exhibiting in evidence such a state of facts as would show that fraud was not designed, or could not have resulted. This he attempted to do by showing the relations of himself and Strong, the obligation of Strong to endorse his paper, his refusal to do so notwithstanding his contract, the necessity for the money for their joint benefit, and the appropriation of the avails of the note in their business, and according to the terms of their agreement. All this was refused, and the evidence offered for that purpose ruled out.

We think this evidence would legitimately tend to disprove the presumption of an intent to defraud, and should have been allowed to go to the jury to enable them to determine *quo animo* the endorsement was procured.

These considerations render an examination of the other errors assigned unnecessary.

A new trial should be granted.

CHRISTIANCY and CAMPBELL JJ. concurred.

MANNING J.:

When, by false pretences, the signature of a person is obtained to a written instrument, where the signing of the name by a third person to such instrument would be punishable as forgery, the law implies an intent to cheat or defraud; and nothing more need be shown to warrant a conviction. But the fraudulent intent implied from the act itself is not

6 MICH. — 2H.

conclusive on the party. He may show there was in fact no intention to defraud.

The Recorder seems to have erred in supposing the implication of law was conclusive, and not *prima facie* evidence only, of the criminal intent. In this I think he erred.

*New trial ordered.*