*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES KIDD PENN,

Defendant-Appellant.

UNPUBLISHED
August 12, 2021

No. 350357
Wayne Circuit Court
LC No. 19-000521-01-FH

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of accosting a child for immoral purposes, MCL 750.145a. The trial court sentenced defendant to five years' probation with 90 days to be served in jail. On appeal, defendant contends the jury's verdict was against the great weight of the evidence, the trial court erred in admitting prior-acts evidence, and the admission of that evidence deprived him of due process. We affirm.

## I. FACTUAL BACKGROUND

On June 11, 2018, defendant was a teacher at Harper Woods High School. Fifteen-year-old ASM was a student in his Economics class. ASM, accompanied by her friend EE, went to defendant's classroom to ask defendant how ASM could improve her grade.[1] ASM and EE testified that defendant told ASM that if she gave him "head" once, she could get a B, but if she did so twice, he would give her an A.

According to ASM, defendant further told her that she was "too young" and "wasn't f*******." However, EE recalled defendant saying, "I wouldn't have sex with ya'll, but ya'll can give me head."

---

[1] ASM later testified she had a D, while EE testified that ASM told her that she had a C.

-1-

ASM also testified that she asked defendant if he was serious and he replied: "Yes." And, although EE described defendant's demeanor as "jokeful[]" when he made his proposals, she, too, testified that "his face" "was serious" and that "he meant it."

EE then left defendant's classroom and ASM followed. The next day, ASM told her best friend about defendant's offer. ASM also reported the incident to school officials, who contacted the local police.

The police obtained a school videotape depicting the girls arriving outside defendant's classroom, defendant arriving, defendant opening the door, the girls entering with defendant following, EE leaving defendant's classroom over a minute later, and ASM following EE. The videotape was admitted as an exhibit and the prosecution argued that it depicted defendant "checking out" the girls after they entered his classroom as he followed them inside.

During their investigation, the police also learned of another incident involving defendant's interaction with a female student. The police interviewed AT, who reported she once overheard defendant say that he thought AT and another female student had "fat asses" and that he "would like to have fun with them."

Before trial, the prosecution notified defendant of its intent to introduce AT's statement as prior bad-acts evidence along with a separate incident. Defendant moved in limine to exclude both incidents. On the first day of trial, the trial court heard defendant's motion. Regarding the 2015 incident pertaining to AT, it was reported that she was wearing headphones when she overheard a male student ask defendant if he thought AT and another female student looked alike. Defendant responded: "No, I think they both have fat asses, and I would like to have fun with them." The prosecutor indicated that, if only the first part of what AT had overheard was at issue, "the People would agree that that would be overly prejudicial and would not be inadmissible [sic] under the rule." However, because defendant's second statement expressed his intent to engage in sexual activity with his students, AT's proposed testimony was admissible under MRE 404(b). The trial court admitted AT's proposed testimony, but determined the remaining other-acts evidence offered was inadmissible.

At trial, AT testified that, in a classroom full of students, defendant told a male student that she and another female student had "fat asses." AT never testified about the second portion of her prior statement, namely, that defendant "would like to have fun with them." And AT, who denied that she was wearing headphones, testified she did not recall what grade she was in when defendant made the statement, but she was a student from 2015 through 2017. Although AT's matter was investigated, defendant continued to teach and AT was removed from his class.

At the close of the prosecution's case, defendant moved for a directed verdict, but the trial court denied his motion. During the prosecutor's initial closing argument, she did not mention AT's testimony. Defense counsel argued that there was reasonable doubt that defendant was guilty in light of the inconsistencies between ASM and EE's testimony along with ASM's testimony that she had met with a lawyer, raising the possibility of a civil suit, and ASM's low grade in defendant's class at the end of the school year. Defense counsel also mentioned AT's testimony, highlighting that the school permitted defendant to teach after investigating AT's allegation:

And then you bring [AT], right, and she says the com—He made a comment about a fat ass. And you better believe that comment was investigated, and [defendant] still was employed, okay. Because this comment was supposedly around a whole lot of kids, right. Okay.

In rebuttal, prosecutor responded that AT's testimony was offered for a limited purpose:

So then why did [AT], a former student, come flying out of the woodwork? As she's here to testify about a situation that happened years ago when something like this didn't happen. Like I said earlier to you in opening, that's not to show that [defendant] is a bad guy, etc. It's to show you that he has this intent and motive to engage in sexual contact or activity with his students. And like I said, this is in front of kids. This is a man saying this in front of children and with you know in concert with his body language there. [AT] who has no stake in this game right now, she has not or [ASM] like I told you, she has nothing to gain from this.

Why would they come here and put themselves through it if it didn't happen?

Thereafter, the trial court specifically instructed the jury about the limited purpose for which it could consider AT's testimony:

You heard some information about an allegation as it relates to something that [defendant] did and that was admitted. If you believe the evidence[,] you must be very careful in how to consider it because it's only admitted for certain purposes. You may think about whether this evidence tends to show that [defendant] had a reason to commit the crime that he's charged with and that he specifically meant to accost, entice or solicit or encourage [ASM] to engage in an act of sexual intercourse. This must not be considered. You must not consider this evidence for any other purpose. You cannot decide that it shows that [defendant] is a bad person or that he is likely to commit the crime. You must not decide, decide that [defendant] is guilty here because you think he is guilty of other bad acts. All of the evidence must convince you beyond a reasonable doubt that he committed the alleged crime or you must find him not guilty.

After defendant's conviction, he moved for a new trial on the grounds that the jury's verdict was against the great weight of the evidence and that the trial court had erroneously admitted AT's testimony under MRE 404(b). Defendant argued that the prosecutor recognized that admitting only the first part of AT's statement was error. That error was prejudicial because this case involved a credibility contest and the prosecution used AT's testimony to bolster ASM's credibility during its rebuttal argument. The prosecution denied the jury's verdict was against the great weight of the evidence because ASM's testimony alone was sufficient to establish the crime was committed. Moreover, ASM's testimony did not stand alone; it was corroborated not only by EE, but also ASM's subsequent disclosures. The prosecution conceded that admitting AT's testimony as it was presented at trial was error, but it was not outcome-determinative error, especially given the trial court's limiting instruction. After hearing argument, the trial court denied defendant's motion for a new trial and he appealed.

## II. GREAT WEIGHT OF THE EVIDENCE

Defendant contends that the jury's verdict was against the great weight of the evidence because ASM's testimony suffered from credibility issues and because the trial court erroneously admitted prejudicial prior bad-acts evidence under MRE 404(b). We disagree.

## A. STANDARD OF REVIEW

"We review for an abuse of discretion a trial court's grant or denial of a new trial on the ground that the verdict was against the great weight of the evidence." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

## B. LAW AND ANALYSIS

"An appellate court will review a properly preserved great-weight issue by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Lacalamita*, 286 Mich App at 469. But "[c]onflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Rather a new trial is only warranted when the testimony "contradicts indisputable physical facts or law." *Id*. Stated otherwise, the testimony must be "patently incredible," or "so inherently implausible that it could not be believed by a reasonable juror." *Id*. Outside of these limited circumstances, "the resolution of credibility questions is within the exclusive province of the jury." *Lacalamita*, 286 Mich App at 470.

The elements of accosting a minor for immoral purposes are "that the defendant (1) accosted, enticed, or solicited (2) a child [less than 16 years of age] (or an individual whom the defendant believed to be a child) (3) with the intent to induce or force that child to commit (4) a proscribed act." *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011). Thus, the prosecution must prove that the defendant acted with specific intent. *Id*. "Alternatively, a defendant is guilty of accosting a minor if the prosecution proves beyond a reasonable doubt that the defendant (1) encouraged (2) a child [less than 16 years of age] (or an individual whom the defendant believed to be a child) (3) to commit (4) a proscribed act." *Id*. "To 'encourage' means 'to inspire with courage, spirit, or confidence[,] . . . to stimulate by guidance, approval, . . . to promote; foster. ' " *Id*. at 500, quoting *Random House Webster's College Dictionary* (2001). Under this alternative, "the act of encouragement is the evil in itself, and an accused, by completing the act, is 'presumed to intend the natural consequences of his [actions] . . . .' " *Id*., quoting *People v Getchell*, 6 Mich 496, 504 (1859). Under either alternative, the proscribed acts include "sexual intercourse or . . . gross indecency, or . . . any other act of depravity or delinquency . . . ." MCL 750.145a.

Defendant makes two arguments with respect to his claim that the verdict was against the great weight of the evidence. First, defendant claims ASM's testimony lacked credibility. Second, defendant contends the admission of the "highly prejudicial MRE 404(b) evidence" caused the verdict to be against the great weight of the evidence. We address each argument in turn.

Defendant first claims the verdict was against the great weight of the evidence because there were "significant credibility issues with [ASM's] testimony, e.g. lack of credibility as to when the statement was made, and with other issues . . . ." This argument is problematic for two reasons. First, defendant bears the burden of establishing the factual predicate for reversal of a jury's verdict. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000) ("[D]efendant bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated."). Although defendant asserts there were "significant credibility issues" with ASM's testimony and "other issues," he specifically identifies only the date that ASM testified the incident occurred. Even so, we recognize that in defendant's statement of facts, he identifies the following inconsistencies in ASM's testimony: (1) ASM reported that the incident occurred on June 13 and told the police it happened on June 12; (2) ASM never told the police or the school that she had asked defendant if he was serious after he offered to raise her grade in exchange for fellatio, even though she did so at trial; (3) although ASM reported that she went to defendant's room to turn in work, the June 11 videotape does not show ASM with any papers in hand; (4) ASM failed to immediately report defendant's remarks despite opportunities to do so; and (5) ASM could not recall whether she actually attended defendant's class after being solicited.

Despite these "inconsistencies" in ASM's testimony, defendant's first argument fails because "the resolution of credibility questions is within the exclusive province of the jury." *Lacalamita*, 286 Mich App at 470. With respect to witness credibility, we defer to the factfinder "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it." *Lemmon*, 456 Mich at 645-646 (quotation marks and citation omitted). Defendant's appellate arguments do not explain how ASM's testimony satisfied this high standard, and thus we are obliged to defer to the jury's assessment of ASM's credibility. Moreover, contrary to defendant's attempt to portray this case as involving a credibility contest, we note that ASM's testimony did not stand alone. EE was present and corroborated ASM's testimony that defendant offered to improve ASM's grade if she engaged in a single act of fellatio and further improve her grade if she engaged in two acts of fellatio. And, although not matching ASM's description exactly, EE confirmed that defendant told the girls that he would not have sexual intercourse with them, but would accept fellatio. Simply put, ASM and EE's testimony was not patently incredible, but was supported by the videotape depicting them arriving at defendant's classroom, entering with defendant, and leaving shortly thereafter.

Turning to defendant's second argument, defendant asserts the jury's verdict was against the great weight of the evidence because the trial court admitted "highly prejudicial MRE 404(b) evidence." Defendant's argument on this point is confusing—defendant appears to suggest that the presence of the prior bad-acts evidence negates the other evidence presented at trial evincing his guilt of the charged offense. Again, to mount a successful challenge under a great-weight-of-the-evidence theory, a defendant must show that "the evidence does not reasonably support [the verdict] and it was more likely the result of causes outside the record, such as passion, prejudice,

sympathy, or some other extraneous influence." *Lacalamita*, 286 Mich App at 469. Here, the prosecution presented testimony from both ASM and EE detailing defendant's proposal that ASM perform fellatio to improve her grade. By focusing on the alleged "highly prejudicial" nature of the prior bad-acts evidence, defendant fails to explain how ASM and EE's testimony describing defendant's statements did "not reasonably support" the verdict, and why the verdict "was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. In the absence of any explanation to the contrary, we cannot conclude the trial court's denial of defendant's motion for a new trial was "outside the range of reasonable and principled outcomes." *Id*. Accordingly, the trial court did not its abuse of discretion when it denied defendant's motion for a new trial on this basis.

Relatedly, defendant alleges he was prejudiced because the prosecution relied on AT's testimony during its closing argument. In making this argument defendant fails to acknowledge that he initially raised AT's testimony during closing argument. Defense counsel stated: "And then you bring in [AT], right, and she says . . . [h]e made the comment about a fat ass. And you better believe that comment was investigated, and [defendant] still was employed, okay." A defendant cannot contribute to an error at trial, and then assert it as a basis for reversal. *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010) ("[A] party may not harbor error at trial and then use that error as an appellate parachute."). Consequently, there was no error when the prosecution responded to defendant's closing argument because it was defendant who initiated argument pertaining to AT's testimony.

Procedural issues aside, even without AT's other-acts testimony, there was sufficient evidence of defendant's guilt. Both ASM and EE testified that defendant requested fellatio in exchange for raising ASM's grade. Both girls reported that defendant was "serious" about his request. Ultimately, it does not matter that the prosecution offered admittedly irrelevant evidence because ASM's testimony alone, and ASM and EE's testimony together, satisfy the elements of accosting, enticing, soliciting a child for immoral purposes. See *Kowalski*, 489 Mich at 499.

## III. PRIOR BAD ACTS

Defendant argues the trial court erred in admitting AT's testimony, which was inadmissible under MRE 404(b). Defendant also maintains his due-process rights were violated by the admission of irrelevant and unduly prejudicial testimony. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). But, "[o]nce the court makes a definitive ruling on the record admitting . . . evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal." MRE 103(a). In this case, the prosecution notified defendant its intent to introduce AT's prior bad-acts testimony before trial. Defendant moved in limine to exclude the proposed prior bad-acts evidence, asserting that AT's testimony was "highly prejudicial" and that no curative instruction would "erase [its] highly prejudicial taint." Even though defendant does not challenge the trial court's pretrial ruling, and, instead,

challenges AT's trial testimony, which included only a portion of the proposed testimony described in the prosecution's pretrial notice, this issue is preserved.

Generally, "[a] trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). If a reviewing court determines evidence was admitted in error over a defendant's objection, such "error ' is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict.' " *Id*., quoting *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citations omitted). "This inquiry 'focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence.' " *Id*. quoting *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (quotation marks and citation omitted). " 'In other words, the effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error.' " *Id*. at 396-397.

## B.  LAW AND ANALYSIS

## 1.  ADMISSIBILITY

"Use of other acts as evidence of character is generally excluded to avoid the danger of conviction based on a defendant's history of misconduct." *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). MRE 404(b)(1) recognizes this general rule barring propensity evidence, but provides for the admission of other-acts evidence for the other purposes:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"For evidence of other crimes, wrongs, or acts to be admissible under MRE 404(b)(1), the proponent of the evidence must show three things: (1) that the other acts evidence is for a proper purpose (other than to show character and action in conformity therewith), (2) that the evidence is relevant to an issue of fact that is of consequence at trial, and (3) that, under MRE 403, the danger of unfair prejudice does not substantially outweigh the probative value of the evidence." *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009)

Although MRE 404(b)(1) forbids the admission of "evidence of other crimes, wrongs, acts . . . to prove the character of a person in order to show action in conformity therewith," a defendant's statement of general intent is not a prior act for purposes of MRE 404(b). *People v Goddard*, 429 Mich 505, 514-515; 418 NW2d 882 (1988). Instead, it is a statement of a party-opponent under MRE 801(d)(2), unless the prior statement constitutes evidence of an actual prior act. See *People v Rosen*, 136 Mich App 745, 751-755; 358 NW2d 584 (1984). If the statement is one of a party-opponent, the appropriate analysis is whether defendant's prior statement is relevant,

and if so, whether its probative value outweighs its potential prejudicial effect. *Id*. at 518. Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more or less probable than it would be without the evidence. MRE 401. Relevant evidence may be excluded under MRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. Unfair prejudice exists where there is a "danger that marginally probative evidence will be given undue or pre-emptive weight by the jury." *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995).

A defendant's general denial places all of the elements of the crime at issue. *People v Sabin (After Remand)*, 463 Mich 43, 68; 614 NW2d 888 (2000). " 'Evidence of motive which suggests the doing of the act charges is always admissible . . . [.]' " *People v Engelman*, 434 Mich 204, 223 n 28; 453 NW2d 656 (1990), quoting 1 Wharton, Criminal Evidence (14th ed), §185, p 782.

Initially, we point out that defendant's arguments focus on the inadmissibility of the prior bad-acts evidence. As already discussed, the prosecution notified defendant of its intent to present prior bad-acts evidence, explaining that AT's testimony would include two parts. First, AT would testify she overheard defendant say he thought AT and another student had "fat asses." Second, AT would testify that defendant also said that he "would like to have fun with them." At trial, however, AT only testified to the first part, omitting the second part. The prosecution acknowledges—both to the trial court and to this Court on appeal—that without the second part of AT's proposed testimony, it effectively presented irrelevant evidence. Again, evidence is only admissible under MRE 404(b) if it is "relevant to an issue of fact that is of consequence at trial." *Steele*, 283 Mich App at 479. Thus, the question here is not whether AT's trial testimony was admissible under MRE 404(b)—indeed, both sides agree the admission of the AT's trial testimony was in error because it was inadmissible under MRE 404(b).[2] Instead, the question is whether the error was outcome-determinative.

"[W]hether the admission of other-acts evidence is harmless is a case-specific inquiry . . . ." *Denson*, 500 Mich at 413 n 15. When other-acts evidence is improperly admitted there is the "high risk of confusion and misuse" of the evidence by a jury for the very purpose it is not permitted—propensity. *Id.* at 410.

On appeal, defendant emphasizes the inadmissibility of AT's trial testimony under MRE 404(b) and suggests that the jury could have only considered AT's testimony to demonstrate that he "allegedly made sexual comments to others prior to the charged offense[]." Thus, it appears that defendant maintains AT's testimony presented the jury with highly prejudicial propensity evidence.[3]

---

[2] In light of the parties' agreement, we do not address whether MRE 404(b), as opposed to MRE 801(d)(2), governs the admissibility of defendant's verbal description of AT and another female student.

[3] Defendant also argues that the prosecution's concession that the first part of AT's testimony would be "overly prejudicial" and inadmissible under MRE 404(b) prevents the prosecution from

AT was one of six witnesses. AT briefly testified about the singular comment defendant made to a male student regarding AT and another female student during class, up to three years earlier. Defendant's remark involved a physical description, not necessarily a sexual one. The trial testimony also established that the investigation into AT's allegation ended with defendant continuing in his teaching position and AT being removed from his class—a point that defense counsel used to argue for acquittal. And, although offensive, defendant's earlier statement was unlike the direct quid pro quo solicitation involving ASM and witnessed by EE. Moreover, the trial court provided a limiting instruction regarding AT's testimony, explaining that it could not be used for propensity. We presume that the jury followed this instruction. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Finally, ASM and EE's untainted trial testimony described their interaction with defendant and defendant's request that ASM perform fellatio in exchange for improving her grade. The school's videotape shows ASM, EE, and defendant were alone in his classroom for just over a minute before EE and ASM left. Thus, the record below demonstrates that the erroneous admission of the other-acts' evidence was harmless, and, therefore, reversal is unwarranted.

## 2. DUE PROCESS

Under the Fifth Amendment, no person may be "deprived of life, liberty, or property, without due process of law." US Const, Am V; see also Const 1963 art 1, § 17. With respect to criminal proceedings, "the failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba v California*, 314 US 219, 236; 62 S Ct 280; 86 L Ed 166 (1941). The admission of irrelevant evidence may violate defendant's constitutional rights if it "so infused the trial with unfairness as to deny due process of law." *Estelle v McGuire*, 502 US 62, 75; 112 S Ct 475; 116 L Ed 2d 385 (1991). Similarly, for the admission of other-acts evidence to violate due process, it must be "so extremely unfair that its admission violates 'fundamental conceptions of justice.' " *Dowling v United States*, 493 US 342, 352; 110 S Ct 668; 107 L Ed 2d 708 (1990), quoting *United States v Lovasco*, 431 US 783; 97 S Ct 2011; 52 L Ed 2d 752 (1977).

With respect to AT's testimony, the trial court took two steps in furtherance of defendant's due-process rights. First, after the prosecution notified defendant of its intent to introduce prior

---

arguing otherwise under the doctrine of judicial estoppel. "Judicial estoppel precludes a party from adopting a legal position in conflict with a position taken earlier in the same or related litigation." *Wells Fargo Bank, NA v Null*, 304 Mich App 580, 537; 847 NW2d 657 (2014) (quotation marks and citation omitted). We have found no criminal cases applying this equitable doctrine, and defendant references only civil cases. Regardless, MCR 2.507(G) provides that "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." This rule applies in a criminal case. *People v Mooradian*, 221 Mich App 316, 319; 561 NW2d 495 (1997). But, again, the issue is not whether AT's trial testimony was inadmissible under MRE 404(b), the prosecution concedes it was not. Instead, the issue is whether the error in admitting it was outcome-determinative.

bad-acts evidence via AT's testimony, the trial court heard arguments on the proposed testimony after defendant objected. The prosecution presented arguments supporting its position that AT's proposed testimony was admissible under MRE 404(b). The trial court agreed and admitted AT's proposed testimony. Second, at the end of trial, the trial court instructed the jury about the limited use of AT's other-acts evidence. Despite the trial court's actions, defendant argues AT's trial testimony, which omitted the statement that he "would like to have fun with" his two female students, deprived him of due process.

Defendant again points to requirements that must be satisfied before prior bad-acts evidence is admitted. Defendant argues the prosecution engaged in misconduct by failing to ensure AT's trial testimony met those requirements.

There is no dispute that AT's testimony at trial differed from what the prosecution anticipated it would be based on an earlier police report generated after the officer-in-charge interviewed AT.[4] That, however, does not mean the prosecution engaged in misconduct. See *People v Noble*, 238 Mich 647, 660; 608 NW2d 123 (1999) (Absent bad faith or prejudice, "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence."). There is no evidence in the record demonstrating that the prosecutor acted in bad faith. To the contrary, the prosecutor sought to elicit evidence that the trial court had determined was admissible as other-acts evidence. And, at the hearing on defendant's motion for new trial, the prosecution maintained that it "properly anticipated that the full sentence [attributed to AT] would have been said."[5] Moreover, for the reasons we have already discussed, defendant was not prejudiced. While defendant's trial was not perfect, it was fair. *People v Miller*, 482 Mich 540, 555; 759 NW2d 850 (2008) (cleaned up) ("A litigant is entitled to a fair trial but not a perfect one for there are no perfect trials."). Accordingly, defendant's claim that his due-process rights were violated fails.

Affirmed.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly

---

[4] Although the police report was referenced in the prosecution's brief in support of its notice, it is not included in the record below.

[5] Defendant also failed to contemporaneously object to AT's testimony. Recognizing that AT's trial testimony differed from the prosecution's proffer regarding the other-act evidence, defendant did not object when AT testified differently than anticipated. Had he objected, defendant could have requested a curative instruction directing the jury to disregard AT's testimony. Because defendant had the opportunity to object and request a curative instruction, and failed to do so, he cannot now claim prosecutorial misconduct deprived him of a fair trial. *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010) ("[This Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect.").