*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 15, 2024

Plaintiff-Appellee,

v

No. 361028
Ingham Circuit Court
LC No. 21-000097-FH

BRANDON MICHAEL WILLIAMS,

Defendant-Appellant.

Before: LETICA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions of third-degree criminal sexual conduct (CSC-III) (person at least 13 but under 16 years of age), MCL 750.520d(1)(a), and concealing or tampering with evidence, MCL 750.483a(6)(b). Defendant was sentenced to serve concurrent terms of 6 to 15 years' imprisonment for his CSC-III conviction and 199 days in jail for his evidence-tampering conviction. We affirm.

## I. FACTUAL BACKGROUND

The victim met defendant through an internet game, where they communicated through chat boxes. Ultimately, she and defendant became "friends" on the social media website Facebook and communicated there. She described her relationship with defendant as "[l]ike friends" and not "more than friends." When she was 13 years old, the victim packed a bag, snuck out of her house, and arranged to meet defendant at a nearby middle school. At the middle school, the victim was picked up by defendant, who was in a black car. Inside the car with defendant were the driver, a woman defendant referred to as his adoptive mother, and her son. The group drove from the victim's home near Grand Rapids, and the victim and defendant were dropped off at a house in Lansing. The victim learned that she was in Lansing because that was what defendant told her.[1]

---

[1] At trial, the driver of the vehicle gave a more specific location of where in Lansing she dropped off defendant and the victim, describing it as about two blocks east of Pennsylvania Avenue by

The victim testified that there were several people in the house. Meanwhile, the victim's father had discovered that she was missing. After unsuccessfully searching the local area for the victim, the father learned from a friend that the victim may have gone away with someone. The father contacted the police, and a review of the victim's Facebook messages occurred. Through Facebook, the father and a police officer contacted defendant, but the victim indicated that she was responding. The officer testified that he was unable to determine the victim's location through their communications. The victim indicated that these contacts caused defendant to be upset with her, yet he did not make arrangements to take her home.

After these Facebook contacts, the victim testified that defendant handed her a "blunt" that smelled like marijuana, and that she took several hits from it. The victim did not think that the blunt would affect her, but she started to feel dizzy, woozy, nauseated, and as if she was going to pass out. She went to another part of the room, and defendant joined her and offered to provide blankets for her to sleep on. She stated that she "blacked out" but remembered feeling excruciating pain and that defendant's penis was inside her vagina. On cross-examination, the victim agreed that she was testifying at trial about details she had not shared at a preliminary examination or during an examination by a sexual assault nurse examiner (SANE).

The victim testified that, when she woke up, defendant was "spooning" her. They were asked to leave the house and they went to the driver's home, where the victim showered and defendant washed her clothes. The parties disputed whether defendant asked the victim to shower or whether she asked to take a shower. Defendant agreed that he had asked the victim if she wanted him to wash her clothing, and he testified that her clothing smelled like she had been around people who had been smoking.

According to defendant, he did not have sex with the victim or put his penis in her vagina. He denied that he used his Facebook account to admit to a friend that he had had sex with the victim. Rather, defendant explained that other people had access to his account, one of whom had previously tried to get him in trouble.

The forensic scientist who compared deoxyribonucleic acid (DNA) samples, including the victim's SANE swabs, testified that the cells from the victim's vulvar swab contained both skin cells and seminal fluid, and that it was "at least 460 sextillion times more likely" that defendant was a contributor to the DNA profile than another man. Although defendant denied engaging in sexual intercourse with the then 13-year-old victim, he was convicted as charged.

---

the highway. Defendant stated that the home had been on Marcus Street. The next day, defendant and the victim were given a ride approximately 1.5 miles away to the driver's home, located on Jewel Street, where they were permitted to shower and do laundry. At the time of trial, MRE 201(c) and (e) provided that judicial notice may be taken at any stage of a proceeding regardless of whether there is a request or not. References to a map establish that these locations are well within Ingham County.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant's claims on appeal relate solely to the effectiveness of defendant's trial counsel. In a motion before the trial court, defendant sought a new trial or evidentiary hearing on the basis that defense counsel had provided ineffective assistance by (1) failing to impeach the victim with inconsistent statements she had made during police and forensic interviews regarding the CSC-III and evidence-tampering charges, (2) stipulating that venue was proper in Ingham County at the preliminary examination, and (3) failing to challenge improper vouching by the SANE nurse. The trial court denied defendant's motion for a new trial and his motion for an evidentiary hearing in accordance with *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).[2] We conclude that the trial court properly rejected defendant's claims.

## A. STANDARDS OF REVIEW

A defendant's ineffective assistance of counsel claim is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The appellate court "reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Id.* "A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake." *People v Swenor*, 336 Mich App 550, 563-564; 971 NW2d 33 (2021). When the appellate court engages in de novo review, the review of the issue occurs without deference to the lower court. *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

This Court reviews for an abuse of discretion the trial court's decision regarding whether to hold an evidentiary hearing. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). "A trial court necessarily abuses its discretion when it makes an error of law." *Id.* at 723.

## B. LEGAL STANDARDS

A criminal defendant has a fundamental right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 653; 104 S Ct 2039; 80 L Ed 2d 657 (1984). The United States Supreme Court has observed that the rights to counsel, due process, and a fair trial are intertwined:

> [T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel

---

[2] This Court also denied defendant's motion for a remand to the trial court that reserved the case call panel's right to remand for a hearing. *People v Williams*, unpublished order of the Court of Appeals, entered April 18, 2023 (Docket No. 361028).

Clause[.] [*Strickland v Washington*, 466 US 668, 684-685; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51 (citations omitted).

A party asserting ineffective assistance has the burden to establish the factual predicate of his or her claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). A defendant may be entitled to an evidentiary hearing when that defendant seeks to support an ineffective-assistance claim with matters outside the record:

> A defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts except in the rare case where the record manifestly shows that the judge would refuse a hearing; in such a case the defendant should seek on appeal, not a reversal of his conviction, but an order directing the trial court to conduct the needed hearing. [*Ginther*, 390 Mich at 443-444.]

When a defendant moves to remand the matter to the trial court for the development of a factual record, the motion must be supported by an affidavit or offer of proof addressing the facts to be established at the hearing. MCR 7.211(C)(1)(a). Although defendant moved for a remand to the trial court, it was not supported with an affidavit or offer of proof.

## C. INCONSISTENT STATEMENTS

Defendant alleges that he is entitled to an evidentiary hearing to introduce unsworn statements that the victim made during her previous police and forensic interviews to support his claim that defense counsel provided ineffective assistance by failing to impeach the victim with these statements. We disagree.

There are several valid reasons why defense counsel may decide not to cross-examine a sexually abused child, including trial strategy, avoidance of the appearance of bullying the victim, undermining the victim through the testimony of other witnesses, and avoidance of elaboration of damaging testimony. See *People v Gioglio*, 296 Mich App 12, 26; 815 NW2d 589 (2012), vacated in part and remanded on another ground 493 Mich 864; 820 NW2d 922 (2012). Additionally, counsel need not impeach a witness on each and every contradictory aspect of the witness's testimony. *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). A decision not to delve into all contradictions may be deemed trial strategy that is not to be second-guessed by the courts. *Id*. Although counsel's failure to impeach a witness may constitute ineffective assistance of counsel, the evaluation may not occur with the benefit of hindsight. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

The right to present a defense pertains only to relevant and material evidence. *People v Danto*, 294 Mich App 568, 604; 822 NW2d 600 (2011). And, there is a general prohibition of the

impeachment of a witness by extrinsic evidence addressing collateral, irrelevant, or immaterial evidence. MRE 608(b); *People v Spanke*, 254 Mich App 642, 644; 658 NW2d 504 (2003), overruled in part on other grounds *People v Barrera*, 500 Mich 14; 892 NW2d 789 (2017). Evidence is not deemed to be collateral if the facts directly relate to the substantive issues in the case, such as guilt or innocence, the facts demonstrate bias and interest, or where the witness's account of the background and circumstances of a material event would not be mistaken if the story of the event were true considering the human experience. See *People v LeBlanc*, 465 Mich 575, 589-590; 640 NW2d 246 (2002); *People v Rosen*, 136 Mich App 745, 759; 358 NW2d 584 (1984).

"When a witness claims not to remember making a prior inconsistent statement, he [or she] may be impeached by extrinsic evidence of that statement." *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). "The purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement-not to prove the contents of the statement." *Id*. "Extrinsic evidence of a prior inconsistent statement is not admissible unless the witness is afforded an opportunity to explain or deny the same[.]" MRE 613(b).

In the present case, the victim gave unsworn statements during an interview with the forensic examiner.[3] On appeal, defendant proffers that there was no strategic reason to fail to present to the jury impeachment evidence of contradictions between the forensic interview and trial testimony addressing (1) the location of defendant in relationship to the victim when she woke up, (2) the inability to recall the sexual penetration during the forensic interview, (3) the victim's failure to mention blood in her underwear, (4) the victim's request to take a shower, (5) the victim's apparent failure to highlight that she lied about her age, and (6) the victim's admission to lying to defendant to get his attention over others.

However, a review of the record reveals that trial counsel extensively explored the victim's contradictions and omissions between her preliminary examination testimony and her trial testimony. To again highlight the contradictions between the victim's statements in the forensic interview and her trial testimony would have been cumulative and redundant and would have caused trial counsel to appear to be bullying the witness. *Gioglio*, 296 Mich App at 26. Indeed, during trial, defense counsel impeached the victim with her preliminary examination testimony. The trial court advised defense counsel to approach the bench, but the sidebar discussion was not preserved in the record. When the trial resumed, defense counsel stated to the victim, "[M]y apologies if I'm coming across in a certain way to you. But let's just go back and let's review again some of your responses about a year ago, okay. Because the version you just gave a few moments [ago] was very different in 2021, isn't that true?" The victim affirmatively stated, "Yes," acknowledging the contradictions in her statements. A short time later, defense counsel apologized

---

[3] Appellate defense counsel indicated that the police interview would be submitted. However, only the forensic interview was submitted for our review. But, counsel only claimed two possible impeachment events from the police interview, the victim's failure to mention blood in her underwear and her claim to be 19 years old. The presence of blood is a collateral matter. And, as defendant acknowledges in his brief, mistake of age is not a defense to this CSC-III. See *People v Cash*, 419 Mich 230; 351 NW2d 822 (1984).

for "yelling" at the victim, explaining that her current version of events was a "big surprise." Within a few minutes, the trial court requested that counsel approach the bench but the sidebar discussion again was not delineated in the record. It is apparent from the record that *continued* impeachment through the forensic or police interviews may have caused the jury to conclude that defendant was merely bullying the victim. *Id*.

Additionally, when extrinsic evidence is used to impeach a witness, the witness must be given the opportunity to explain or deny the same. MRE 613(b). If defense counsel impeached the victim with portions of her forensic interview, the prosecutor may have sought to play the entire video for the jury which would not have boded well for the defense. In this video, the victim relayed information that indicated that defendant groomed and manipulated her. The victim expressed that defendant gave her favorable attention and praise that she did not receive from others and was concerned, not with the pain she was experiencing and the need for medical treatment, but with defendant's anger toward her. While the victim claimed that the blunt she was given had negative effects on her and her memory, it was equally apparent and plausible from the forensic interview that the victim declined to give specific details in an attempt to protect defendant.

On appeal, defense counsel did not provide evidence that trial counsel was unaware of evidence pertinent to the trial but merely identified additional opportunities for impeachment that were not exercised. But, the availability of additional impeachment evidence and the decision not to delve into all contradictions does not demonstrate ineffective assistance. See *McFadden*, 159 Mich App at 800. Instead, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Trakhtenberg*, 493 Mich at 51. Defendant bears the burden of demonstrating ineffective assistance and must provide an affidavit or offer of proof to warrant the remand for an evidentiary hearing. See *Hoag*, 460 Mich at 6; MCR 7.211(C)(1)(*ii*). He failed to meet this burden, and therefore, the trial court did not abuse its discretion by denying his request. *Unger*, 278 Mich App at 216-217.[4]

---

[4] Defendant contends that trial counsel was ineffective for failing to impeach the victim regarding the conversation that led to washing her clothes and taking a shower. Irrespective of the victim's failure to quote the exact conversation with defendant, trial counsel's questioning of the victim on cross-examination led to her admission that she was not compelled or forced to take a shower or have her clothes laundered. Nonetheless, defendant was convicted of the evidence tampering charge. Record evidence to support a claim of ineffective assistance was not demonstrated. *Hoag*, 460 Mich at 6. Additionally, there is no reasonable probability that the outcome would have been different, *Trakhtenberg*, 493 Mich at 51, in light of the DNA evidence despite defendant's testimony denying any sexual contact with the victim.

## D. VENUE

Defendant also asserts that, had defense counsel not stipulated to venue being proper, the case would have been dismissed at the conclusion of the preliminary examination, and therefore, defense counsel provided ineffective assistance.[5] We disagree.

This Court reviews de novo the existence of venue in a criminal prosecution. *People v McBurrows*, 504 Mich 308, 312; 934 NW2d 748 (2019). "Venue is part of every criminal prosecution and must be proved by the prosecutor beyond a reasonable doubt. *People v Webbs*, 263 Mich App 531, 533; 689 NW2d 163 (2004). "The general venue rule is that defendants should be tried in the county where the crime was committed." *People v Houthoofd*, 487 Mich 568, 579; 790 NW2d 315 (2010). However, if an offense is committed on the boundary line between two counties or within one mile of the county dividing line, it may be prosecuted in either county. MCL 762.3(1).

The purpose of a preliminary examination is "to determine whether a felony was committed and whether there is probable cause to believe the defendant committed it." *People v Yost*, 468 Mich 122, 125-126; 659 NW2d 604 (2003). Probable cause requires evidence that is "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id*. at 126 (quotation marks and citation omitted). An error in the venue determination at the preliminary examination stage is examined under a harmless error analysis. *Houthoofd*, 487 Mich at 593.

In the present case, defense counsel stipulated to venue for purposes of the preliminary examination only. At the conclusion of the prosecution's proofs *at trial*, defense counsel submitted that Officer Bradley Hagman merely testified that the victim was located in the city of Lansing, but he failed to identify an address location in Lansing, Ingham County. Defense counsel moved for a directed verdict premised on venue, stating that "if there's no testimony" to address venue, then dismissal was warranted on that ground. In opposition to this motion, the prosecutor noted that the victim testified that the offense occurred in Lansing in light of defendant's representation.

The trial court determined that there was sufficient testimony that the criminal offenses occurred in Lansing to submit the issue to the jury. It also noted that to the extent Lansing extended into other counties, the one-mile rule may apply, see MCL 762.3(1). The trial court also denied defendant's motion for a new trial challenging venue, determining that the victim's belief that she was taken to Lansing, under these facts, presented sufficient circumstantial evidence for the jury to conclude that venue was proper in Ingham County.

In light of the record evidence, a claim of ineffective assistance of counsel was not supported by the record because venue was proper in Ingham County, and counsel was not ineffective for stipulating to venue at the preliminary examination. At trial, the driver that picked up the victim from the middle school indicated that she brought the victim and defendant to Lansing. She specifically testified that she dropped the two off at a home east of Pennsylvania

---

[5] There is no indication that defendant sought to introduce additional evidence at an evidentiary hearing to support this claim.

Avenue near the freeway. The next day, the driver stated that the victim and defendant appeared at her home, identifying her address on Jewel Street. She believed that the victim and defendant apparently walked the estimated 1.5 miles from the drop off location to her home because they appeared to be out of breath. The driver gave defendant permission to use her home to take showers and do laundry. Thus, the claim that defendant tampered with evidence by washing the victim's clothes and by having the victim take a shower occurred in Lansing located within Ingham County. Additionally, the victim testified that defendant told her that they were in Lansing. And, then-Lansing Police Officer Hagman described the locations he visited in Lansing in an attempt to locate the victim before finding her at the driver's Jewel Street home. Contrary to trial counsel's motion for directed verdict and appellate counsel's motion for new trial, there was record evidence to establish that the offenses occurred in Lansing within the confines of Ingham County, such that venue was proper. Accordingly, the stipulation to venue at the preliminary examination did not negatively impact the trial and did not demonstrate the requirements of ineffective assistance.

Defendant's appellate brief claimed that the "only testimony at trial to establish the location of the home" was defendant's representation to the victim that they were in Lansing, and this information was insufficient to establish venue. This representation is contrary to the trial testimony wherein two specific locations in Lansing were identified. Because defendant simply made blanket assertions about a lack of venue evidence, he failed to meet his burden of establishing the factual predicate for his claim of ineffective assistance. *Hoag*, 460 Mich at 6.[6]

Regardless, even presuming that defense counsel made an unprofessional error by stipulating to venue when parts of Lansing fall outside Ingham County, this error did not prejudice defendant under the ineffective-assistance standard. The defendant must also show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 56 (quotation marks and citation omitted). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v Richter*, 562 US 86, 112; 131 S Ct 770; 178 L Ed 2d 624 (2011) (citation omitted).

At trial, witnesses testified about the location at which defendant and the victim were dropped off. Reference to a map establishes that this area is firmly within the boundaries of Ingham County.[7] There is no basis from which to conclude that the prosecution could not or would not have produced at the preliminary examination the witness who dropped off defendant and the victim had counsel not stipulated to venue. While it is *possible* that defendant would not have

---

[6] Indeed, it appears that defendant's brief failed to comport with MCR 7.212(C)(6), requiring disclosure of "[a]ll material facts, both favorable and unfavorable," that must be "fairly stated without argument or bias."

[7] At the time of defendant's trial, MRE 201(b)(2) provided that facts are subject to judicial notice if they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." MRE 201's amendment, effective January 1, 2024, would not alter the result.

been bound over had defense counsel not stipulated to venue, such a result is not substantially likely.

## E. VOUCHING

Defendant submits that defense counsel provided ineffective assistance by failing to object when the SANE nurse improperly vouched for the victim's testimony.[8] We disagree.

The trial court did not clearly err when it found that defense counsel did not provide ineffective assistance. Furthermore, even if counsel's performance was deficient, it was not reasonably probable that a different result would have occurred but for defense counsel's failure to challenge this testimony. Defense counsel is not required to make meritless or futile objections. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

An expert opinion will not be excluded "simply because it concerns the ultimate issue," but a physician may not testify about whether a complainant has been sexually assaulted when the opinion is based only on the doctor's opinion that the victim told the truth. *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019). Evidence of behavioral patterns in sexually abused children is admissible to explain to the jury that it is actually consistent with behavior displayed by abuse victims. *Id*. at 558. And, testimony that the victim's behavior was consistent with the behavior of other child abuse victims is admissible to rebut a challenge to the victim's credibility. *Id*. However, when a defendant does not argue that the victim's behavior was inconsistent with that of an abuse victim, an expert improperly vouches for the veracity of a child by testifying that only a small percentage of children lie about sexual abuse. *Id*. at 258-259. Accordingly, testimony that only about 2% to 4% of children lie about sexual abuse is not permissible. *Id*. at 259. Similarly, testimony that a doctor diagnosed a child with "probable pediatric sexual abuse" is not permissible if there was no physical evidence of a sexual assault. *Id*. at 261-262 (quotation marks and citation omitted).

In this case, the SANE nurse testified that a SANE exam took place in "a special room for that in our hospital, that's set aside from the Emergency Department." She explained that "emergency departments can be really busy and chaotic places, and somebody who has undergone a trauma such as a sexual assault, we like to remove them from that environment just so it doesn't, you know, add to any of their fears." Additionally, the room was "under lock and key" so that only SANE nurses could enter. The following exchange then took place:

> *Q*. And is that part of your treatment protocol for this type of diagnosis that's come in?
>
> *A*. Yes.

The nurse did not testify that the victim was a victim of sexual assault; rather, she testified about the examination process generally. The SANE nurse did not testify that she diagnosed the

---

[8] Consistent with defendant's venue argument, defendant did not seek to introduce new evidence at an evidentiary hearing to support this claim.

victim with sexual assault or sexual abuse, and she did not opine that the victim had been sexually assaulted. The SANE nurse's general testimony is patently different than the impermissible testimony addressed in *Thorpe*. Accordingly, defense counsel did not provide ineffective assistance because an objection to this testimony would have been futile. *Putman*, 309 Mich App at 245.

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle